608 So.2d 1111 (1992)
FIDELITY FINANCIAL SERVICES, INC.
v.
Scotty STEWART and Joann Stewart.
No. 91-CA-0217.
Supreme Court of Mississippi.
February 26, 1992.
On Rehearing November 19, 1992.
John E. Howell, Meridian, for appellant.
Dannye L. Hunter, Jackson, for appellees.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the court:
From the dismissal of its complaint for a deficiency judgment, Fidelity appeals. The only issue is whether the circuit court erred in ruling Fidelity failed to give the Stewarts reasonable notice of the sale of their repossessed automobile.
Following default in payment of a promissory note, Fidelity repossessed and sold the Stewarts' car, then sued in the circuit court of Scott County for a deficiency judgment in the amount of the loan balance of $2,751.87, attorney fees of $917.29, and interest and costs. At a bench hearing, the circuit judge gave a directed verdict for the Stewarts, holding that notice of sale mailed to the Stewart's address, and signed for by a Stewart relative, was insufficient. This was error.
This case is controlled by McKee v. Mississippi Bank & Trust Co., 366 So.2d 234, 238 (Miss. 1979), where we held:
If notice in writing is personally delivered to the debtor, or if it is sent by mail to the debtor's address (whether actually received by the debtor or not), such personal delivery or sending by mail will satisfy the requirement of notice... .
REVERSED AND REMANDED.
*1112 ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.

ON PETITION FOR REHEARING

I. INTRODUCTION
Fidelity Financial Services repossessed Scotty and Joann Stewart's vehicle after they had become delinquent in their monthly payments. Fidelity sold the vehicle and then sued the Stewarts in the Scott County Circuit Court seeking a deficiency judgment.
On motion for a directed verdict, the Stewarts claimed that they never received notice of the sale of their vehicle. According to the evidence adduced at trial, Fidelity provided notice of the sale of the vehicle by mailing a certified letter to the Stewarts' address. Unfortunately, the Stewarts' address is shared by three other families. That is, four families receive their mail through the same mailbox.
The return receipt of the certified notification letter indicated that the Stewarts did not sign for it; rather, their step-aunt, Bernice Morris, did. Morris testified that she did not give the letter to the Stewarts; she gave it to Madison McBride, who is Joann Stewart's father. McBride did not testify, so what he did with the letter is unknown. What is known is that the Stewarts claimed at trial that they never received the letter. Fidelity countered that, as a matter of law, it provided sufficient notice. For support, Fidelity cited this Court's opinion in McKee v. Mississippi Bank & Trust Co., 366 So.2d 234, 238 (Miss. 1979):
If notice in writing is personally delivered to the debtor, or if it is sent by mail to the debtor's address (whether actually received by the debtor or not), such personal delivery or sending by mail will satisfy the requirement of notice.
The trial judge directed a verdict in favor of the Stewarts after reasoning:
[Fidelity] takes the position that, in this case here, that there was notice sent out [and] was received by a Mrs. Bernice Morris... . Fidelity was in good shape by mailing  complying with [relevant law], by mailing the notice to the known address, and I think that if [it] had just gone and mailed a letter to them, [it] would not have known that Bernice Morris received that notice, and [it] could have rested upon [law for support]. Now, what we have that's unusual in this case is that you have four different parties that are receiving their mail through the same mailbox. Therefore, it is my opinion that whenever they received notice back  [Fidelity] sent [its] letter by certified mail  [it] received notice that Bernice Morris had received the letter addressed to the defendants, that [it] then had the responsibility of taking further action to protect [itself], and did not do so... . [Fidelity] then, knew  [it was] assuming that since [it] mailed it to that address, that [it] would receive it, and I don't think the law would allow that assumption, and when [it] did receive notice back that Bernice Morris had received the letter that was addressed to the defendants, then the responsibility then was [Fidelity's] to take additional notice, or action. Therefore, the motion is sustained.
Record Vol. II, at 36-37.
On appeal, this Court reversed and remanded after concluding that the trial judge erred in "holding that notice of sale mailed to the Stewart's [sic] address, and signed for by a Stewart relative, was insufficient." See page 1111.
The Stewarts filed a petition for rehearing, which this Court has granted for the following reasoning.

II. ANALYSIS
Notice of liquidation of collateral by a secured creditor is governed by § 9-504(3) of the Uniform Commercial Code as adopted by this State. See Miss. Code Ann. § 75-9-504(3) (1972) ("[R]easonable notification of the time and place of any public sale ... shall be sent by the secured party to the debtor."); see also Associates Commercial Corp. v. Parker Used Trucks, Inc. & J.R. Parker, 601 So.2d 398, 400, (Miss. *1113 1992); Murray v. Payne, 437 So.2d 47, 50 n. 2 (Miss. 1983); McComb Equipment Co. v. Cooper, 370 So.2d 1367, 1368 (Miss. 1979); Walker v. V.M. Box Motor Co., Inc., 325 So.2d 905, 906 (Miss. 1976). In the case sub judice, the trial judge construed the foregoing statutory provision and ruled that mailing the letter to the Stewarts was sufficient as a matter of law but insufficient as a matter of fact.
This Court's analogous decision in Carter v. Allstate, 592 So.2d 66, 75 (Miss. 1991), is illustrative of the trial judge's reasoning. In Carter, this Court decided that a certificate of mailing establishes a presumption that a notice of cancellation of an insurance policy reached its destination (the insured's last known address). However, this presumption "may be rebutted by the insured who contends that he or she did not actually receive the notice." But "mere denial of receipt is insufficient to create a triable issue of fact." In other words, "`[p]roof of mailing of notice of cancellation ... shall be sufficient proof of notice'  absent countervailing evidence of sufficient weight to rebut the presumption that it was received." Id.
Another case  In re Carter, 511 F.2d 1203, 1204 (9th Cir.1975)  is particularly on point. In In re Carter, the creditor repossessed a harvester (farm equipment) after the debtor failed to make his monthly payment. The creditor then mailed a certified letter, return receipt requested, to the debtor notifying him of the public sale of the harvester. The letter was returned unclaimed, and the creditor made no further attempt to notify the debtor  although the creditor knew of the debtor's whereabouts. After the sale, the creditor sued the debtor seeking a deficiency judgment. The debtor claimed that the creditor failed to provide him with notice of the sale and should therefore be barred from recovering a deficiency judgment; the creditor countered that he complied with the dictates of the commercial code and that the presumption of receipt should apply. The bankruptcy judge agreed with the debtor, and the Ninth Circuit affirmed. The Ninth Circuit explained:
The presumption that a letter duly mailed was received by an addressee is not conclusive, but rebuttable by satisfactory evidence to the contrary. Consequently, where, as here, there is uncontradicted evidence that the letter mailed was not received, the presumption of receipt is overcome.
The notice requirement is for the protection of the debtor. Its purpose is to permit the debtor to bid at the foreclosure sale or to otherwise assure that the sale was conducted in a commercially reasonable manner. Here that purpose has been frustrated by the failure of the [creditor] to attempt a second delivery when it knew the notice had not been received by the debtor.
Id. at 1204-05 (construing statutory law in a state which adopted the UCC); see, e.g., Day v. Schenectady Discount Corp., 125 Ariz. 564, 611 P.2d 568 (1980) (creditor's knowledge of debtor's nonreceipt of notice of sale imposed further duties on creditor of making additional efforts to provide notice in order to comply with UCC 9-504(3)); Commercial Credit Corp. v. Cutshall, 28 U.C.C.Rep.Serv. 277 (Tenn. App. 1979) (same); Geohagan v. Commercial Credit Corp., 130 Ga. App. 828, 204 S.E.2d 784 (App. 1974) (same).
In the case sub judice, the spirit and principles of Carter v. Allstate, In re Carter, and other related cases are reflected in the trial judge's ruling. Fidelity's return receipt established a presumption that the notice reached its destination (the Stewarts' address) and that the Stewarts received notice of the sale. The Stewarts, however, rebutted this presumption by proving that they did not sign the return receipt and by presenting the testimony of Bernice Morris who admitted that she did not give the letter to the Stewarts after she signed for it. Thus, a factual dispute arose and the judge resolved it in favor of the Stewarts.

III. CONCLUSION
In sum, the trial judge agreed with Fidelity's contention that it complied with relevant law on providing notice of the sale of a debtor's repossessed collateral. However, *1114 the judge concluded that Fidelity should have done more once it learned that someone other than the Stewarts had signed the return receipt. Restated, Fidelity provided sufficient notice as a matter of law but not as a matter of fact.
The foregoing should not be construed as advocating adoption of an actual-notice requirement. Sending reasonable notice is all that Miss. Code Ann. § 75-9-504(3) requires. In cases in which the creditor knows that the debtor has not received notice, this Court construes statutory law as imposing a duty on the creditor to make an additional good-faith effort to notify the debtor. This would help to further the goal of a notice requirement, which is to protect the interests of the debtor and "to permit the debtor to bid at the foreclosure sale or to otherwise assure that the sale was conducted in a commercially reasonable manner." In re Carter, 511 F.2d at 1204.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., SULLIVAN, PITTMAN and McRAE, JJ., concur.
HAWKINS, P.J., dissents with separate written opinion, joined by BANKS, J.
ROBERTS, J., not participating according to supreme court internal rules.
HAWKINS, Presiding Justice, dissenting:
Respectfully, I differ with my colleague Prather's conclusion that Fidelity Financial Services, Inc., the creditor, was required to do more than send notice by mail to Scotty and Joann Stewart, debtors, at their postal address to satisfy the notice requirement of Miss. Code Ann. § 75-9-504(3) (1972). That provision of the Uniform Commercial Code does not require that the debtor actually receive the notice. The sending of the notice is the only requirement. McKee v. Mississippi Bank & Trust Co., 366 So.2d 234, 238 (Miss. 1979).
The uncontradicted proof is:
(1) Fidelity sent notice of sale of the repossessed motor vehicle, certified mail, return receipt requested, to the address supplied to it and verified by the Stewart's signatures in the loan documents;[1]
(2) The notice was delivered to the loan document address and signed for by Bernice Morris, who is listed as an aunt under "closest relative not living with you" also in the loan documents. The aunt's address is the same address as the Stewarts listed in Fidelity's promissory note/security agreement;
(3) The Stewarts received their mail at the address given by them to Fidelity;
(4) Fidelity's demand letter sent after the sale of the repossessed vehicle was admittedly received by the Stewarts at that address;
(5) Fidelity's notice of deficiency also sent to that address was signed for by James L. Morris but admittedly received by the Stewarts; and
(6) Joann Stewart's [the only debtor who testified] driver's license listed the very same address.
In the trial court only Joann Stewart denied receiving the notice of sale. Scotty Stewart did not testify. No allegation of fraud or lack of "good faith" by Fidelity in the sale of the collateral was plead as a defense, or urged on appeal.
In considering proper resolution of Commercial Code cases, we need to remain mindful of Code history, codification and its effect on commercial transactions.
The Code is basically a national law of commerce, and declares in statutory form various principles formerly covered only by case law or commercial custom. The mere fact of Code adoption by the many state legislatures is in itself an acknowledgment of a public need and desire to obtain a strict standard of conformity to certain commercial transactions. The Code does not purport to cover the spectrum of transactions between persons but deals only *1115 with the specified commercial practices, leaving the agreements of parties to express their "own law" in the unusual noncommercial transactions.
As a statute, the Code is interpreted according to principles governing statutory construction.
The Code represents an entirely new approach in several areas of commercial law, especially as to secured transactions. Precode decisions inconsistent with expressed terms of the Code are no longer authority.
In sum, the Code has as one of its prime purposes the creation of statutory provisions providing complete regulation of certain types of commercial dealings. The purpose is not to be blunted or thwarted by grafting onto the Code by implication or otherwise pre-code decisions not provided for in the statutory scheme. Code issues should be resolved by application of Code provisions, exclusive of inconsistent common law principles. See Anderson, Uniform Commercial Code (3rd ed. 1985), Article 1, pp. 1-72.
The written opinion and the "principles and spirits" of Carter v. Allstate, 592 So.2d 66 (Miss. 1991) do not support the majority's result. In Carter, we dealt with an insurance company's cancellation of its contract of insurance prior to the expiration date. This is hardly analogous to a "secured party's right to dispose of collateral after default" pursuant to specific provisions of our Uniform Commercial Code. I have no quarrel with Carter, but its use as authority for a Commercial Code case is mixing applies with oranges.
Contrary to the majority opinion, In Re Carter, 511 F.2d 1203, 1204 (9th Cir.1975), is not a case "particularly on point." Provisions of § 9-504(3) of the California Code differ substantially from the provisions of the official Uniform Commercial Code and our corresponding Code provision. The California Code requires "the secured party must give to the debtor" a notice in writing of the time and place of the intended disposition of the collateral, while the official Code and ours provide that notice "shall be sent by the secured party to the debtor."
The California variations of § 9-504(3) from the official Code have been the subject of Code comment by the "Permanent Editorial Board for the Uniform Commercial Code" in its official report. In giving its reasons for rejecting the California changes, the editorial board stated, in part:
General standards of good faith and commercial reasonableness were adopted in preference to rigid mandatory formulae for either public or private sales.
* * * * * *
The editorial board considers the California variations constitute unsound policy.
West's, California Codes, Commercial Code, (1990), § 9504, California Code Comment, pp. 596-97. See also, Anderson, Uniform Commercial Code (3rd ed.) Vol. 9, § 504(3), pp. 690-91.
Moreover, In re Carter appears to be an instance of misapplication of the common law "rebuttable presumption" theory to a case factually controlled by the provisions of the Commercial Code.
Day v. Schenectady Discount Corp., 125 Ariz. 564, 611 P.2d 568 (1980), is neither analogous to nor authority for the majority position. Day involves a factual situation where the creditor knew before sending notice to debtor that the debtor did not reside or receive mail at the address used for notification. The action in conversion by debtor necessarily raised the issue of good faith. Moreover, in reversing summary judgment for the creditor, the court recognized that the case involved an issue of fact concerning the creditor's violation of the statute by purchasing at the private sale of the collateral without bringing himself within the "recognized market" or "standard price quotation" exceptions.
The notice provisions of our Uniform Commercial Code state its prescriptions plainly, without ambiguity, and, when followed, the effect. Miss. Code Ann. § 75-9-504(3) (1972) states that the notification of the time after which the sale or other intended disposition of collateral is to take place "shall be sent by the secured party to the debtor." [emphasis added] Miss. Code Ann. § 75-1-201(38) (1972) defines the *1116 word "send" as used in our Code as meaning:
"Send" in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances. [emphasis added][2]
In McKee, we recognized that § 75-9-504(3) and § 75-1-201(38) controlled notice requirements for creditor's sales after default in cases coming within the provisions of the Code. In McKee we stated:
If notice in writing is ... sent by mail to the debtor's address (whether actually received by the debtor or not), such ... sending by mail will satisfy the requirement of notice as far as the contents of the notice are concerned.
McKee at 237-38.
In this case, the parties agreed that the debtor's address was Route 2, Box 96, Lake, MS 39092. All of Fidelity's notices were sent, postage prepaid, to this address.
The majority tells us the notice of liquidation is "governed by § 9-504(3) of the Uniform Commercial Code as adopted by this state." If so, how in the world can we require actual notice when the statute and McKee specifically state this is not necessary. Admittedly, a feeble effort is exerted in the majority's see-saw expression that its holding "should not be construed as advocating adoption of an actual notice requirement." The majority then attempts to restrict its holding to those cases in which "the creditor knows that the debtor has not received notice." Well, that's just fine and dandy, but where is the evidence that Fidelity knew the Stewarts did not receive the notice? Also, what about § 9-504(3), § 1-201(38) and McKee? The statute states that "notice means to deposit in the mail ... with postage or cost of transmission provided for and properly addressed." McKee holds that if the notice is sent to the debtor's address, the requirement of notice is satisfied "whether actually received by the debtor or not."
This holding conforms to treatise interpretations of the Commercial Code, as well as all of the recent cases construing the notice provision of the Code.[3]
In J. White and R. Summers, Uniform Commercial Code § 27-12, p. 602 (3rd ed. 1988), the following requisites, reason and effect of Code notice is stated:
After the secured creditor prepares a notice with all the necessary information and rechecks it to assure accuracy, the creditor must send the notice to the debtor. Section 1-201(38) requires that the notice be properly addressed. However, the Code does not require that the debtor actually receive the notice. Section 1-206(26) makes this clear, and a comment states: "When the essential fact is the other party's receipt of the notice, that is stated."[4]Neither 9-504(3) nor the definition of "send" explicitly states that the notice must ultimately *1117 reach the debtor. We know of no case holding that the debtor must receive the notice, assuming it to have been properly sent. Indeed, if a creditor had to assure debtor's receipt of the notice, a debtor could hide to prevent disposition of collateral. Of course, creditors can, and usually should, use certified mail and the like so that proof of mailing exists. [emphasis ours]
In Altman Tractor & Equipment Co. v. Weaver, 288 S.C. 449, 343 S.E.2d 444 (1986), 1 UCC Rep.Serv.2d 599, the South Carolina Supreme Court, with almost the same facts as those in this case, held that the secured party complied with § 9-504(3) of their Commercial Code by sending notice by registered mail properly addressed to the debtor. The South Carolina court stated: "The fact that the return receipt was signed by a third person did not require further action by the secured party." Altman 343 S.E.2d at 445, 1 UCC Rep. Serv.2d at 600.
Section 36-9-504(3) of the South Carolina Code is identical with § 75-9-504(3) of our Code.
In Lankhert v. Estate of Sherer, 811 S.W.2d 853 (Mo. App. 1991), 15 UCC Rep. Serv.2d 1146, the Missouri court noted that the Uniform Commercial Code does not require that the debtor actually receive notice.
In Underwood v. First Alabama Bank, 453 So.2d 743 (Ala.App. 1983), 39 UCC Rep. 738, the Alabama court held that a bank which sent written notice of sale of repossessed collateral to the address provided by debtor in the sales contract fulfilled the notice requirement of § 9-504(3) even though the notice was returned undelivered. The court held that to require a secured party to send notice does not also require the debtor to receive it.
In Ford Motor Credit Co. v. Solway, 2 UCC Rep.Serv.2d 1164, 1986 WL 12809 (N.D.Ill. 1986), the court held that where one entitled to statutorily required notice of sale of collateral moved without informing the creditor of his change of address or leaving a forwarding address with the post office so that creditor sent notices to his old address and they were not received, notice was sufficient under § 9-504(3) which requires only that notification be sent. Whether a party actually comes to know of the matter is not a part of notice under the Commercial Code. That agents of creditor knew he had another business was irrelevant. The court held that the UCC imposes no obligation of multiple notice requirement, nor does it put the burden of tracing the debtor's movements on the secured party. Notice is sent if mailed to the address specified on the instruments and the address used by creditor was that used on all instruments signed by debtor. Moreover, under § 1-201(26)(b), a person receives notice when it is duly delivered at the place of business through which the contract was made.
In Chrysler Dodge Country USA, Inc. v. Curley, 782 P.2d 536, 11 UCC Rep.Serv. 381 (Utah App. 1989), the court held that under the Code it is not necessary that the debtor receive actual notice of a default sale; it is enough that notice was sent to an address where creditor could have reasonably expected it to reach debtor.
Commercial Code treatises and cases interpreting its provisions tell us time and time again that § 9-504(3) does not require that a debtor actually receive the notice.[5]
It is noteworthy that in Logan v. Corinth Alcorn County Joint Airport Board, 5 UCC Rep.Serv.2d 53, 665 F. Supp. 506 (N.D.Miss. 1987), the court held that a plaintiff received notice of his contract termination when he was mailed a registered letter and a notice of delivery was placed in his mailbox at his business address, even though he never claimed the letter, since the mailing was a "proper sending" and "giving" of notice.
In a final fragile effort to stretch and apply valid legal principles to bolster its resolution, the majority tells us that its holding is restricted to and based upon the duty of the creditor to make additional *1118 good faith efforts to notify the debtor of intended collateral disposition in cases where the creditor knows the debtor has not received notice. First, there is no evidence in the record establishing as a fact that Fidelity knew the Stewarts had not received the notice mailed to them. The fact that the returned receipt shows Bernice Morris signed for the notice does not establish this fact. Bernice Morris was listed by the Stewarts in the loan documents as their aunt who was their "closest relative not living with them," but whose mailing address was the same as the Stewarts.[6] Secondly, this determination overlooks the fact that lack of good faith was neither plead nor proved in the trial court, is not asserted or relied upon by Stewarts as a basis for affirmance, and does not factually exist in this case. The Stewarts' sole defense is based on its non-receipt of notice of the intended disposition of secured collateral. Fidelity appeals from the trial court's directed verdict in favor of the Stewarts. Fidelity contends their notice was sufficient to satisfy Code requisites. Initially, we affirmed citing McKee as controlling the issue. Stewarts' petition for rehearing maintains simply that he did not receive notice and therefore "no notice cannot be reasonable notice." Established Commercial Code case law assures us however that Fidelity's action in mailing the notice to the address given them by the Stewarts, with postage prepaid, satisfies Code requisites. Knowledge by Fidelity that the return receipt for the correctly sent notice showed Bernice Morris received the notice does not under the related circumstances establish or infer lack of good faith by Fidelity. If this were true and a creditor had to assure debtor's receipt of the notice in such cases, a debtor could hide or use other like methods to prevent disposition of collateral. Likewise, the sending of the notice in strict conformance with the code provisions and the parties' contract does more than raise a rebuttable presumption of receipt. Under the code it constitutes receipt. The Code provides that a debtor "receives" a notice or notification when it is duly delivered to a place held out by him as the place for receipt of such communications. Miss. Code Ann. § 75-1-201(26). The notice was delivered to the place designated by the Stewarts as a part of their loan agreement. There is neither a rebuttable presumption nor issue of good faith in this case.
In General Motors Acceptance Corp. v. Thomas, 15 Ohio Misc. 267, 44 O.O.2d 459, 237 N.E.2d 427 (1968), an action for deficiency judgment after sale of secured collateral was instituted by General Motors (creditor) against Homer Thomas (debtor). The debtor answered admitting the contract but denying liability because creditor had not complied with statutory notice requisites prior to sale of the collateral. On trial, the evidence showed that notice by registered mail was sent to debtor at the address set forth in the contract. The return receipt showed delivery as follows: "SIGNATURE OR NAME OF ADDRESSEE (Must always be filled in)" there is written the clearly legible name "Homer Thomas." Immediately beneath in the *1119 space marked: "SIGNATURE OF ADDRESSEE'S AGENT, IF ANY" there is written the clearly legible name "Clayton Stiner." The Ohio court held the notice complied with the statute, affirmed action of the trial court in granting creditor summary judgment and stated:
The facts in this case are that the defendant mortgagor's then current address was correctly stated "in the mortgage" as being "Varner Trailer Court, Antwerp, Ohio." He has ever since resided here in fact. The post office delivered instant notice to someone for him at this address... . The return receipt gave plaintiff not the slightest indication that the statute was violated in letter or in policy. No proof is offered nor is the court aware of any conditions or circumstances from which it might be inferred that plaintiff has acted unequitably or unconsciously. ...
Where the returned envelope is marked "addressee unknown," "insufficient address," "moved  left no address," "no such street," "no such number," or "no such office in the state" and a check reveals that it was correctly addressed as "given in the mortgage" we may be sure that the odds are great either that some mistake has been made, a fraud has been perpetrated on the creditor, or the debtor has fled in an attempt to avoid for a while at least bill collectors or other unpleasant people. In such cases I perceive no reason why the creditor should not proceed with his sale and have judgment thereon.
* * * * * *
The court cannot feel at liberty to amend this statute ... when it clearly appears to the creditor that proper notice arrived at the debtor's address, was delivered there, and would normally have been delivered to the debtor had the debtor's conduct been above approach. Failure to receive actual notice may not always be a denial of due course of law in every case because the legislature is authorized to make reasonable rules. Requiring actual personal notice in every case, even if utilizing the mails, no doubt ultimately would burden every debtor with increased credit costs. The legislature has provided that mortgagors who are, as here, victim of either negligence or thievery, without fault on the part of the mortgagee, must bear their own loss as against their mortgagee. In view of practical consequences, the legislature's judgment is certainly not unreasonable. Although not without sympathy for the defendant here, the court informs him that the law must not infrequently determine, as between innocent persons, who must immediately bear a given loss.
And although the court has not the slightest reason to doubt defendant here when he says he never actually received the notice mailed to him, it does seem, upon reflection, that more than one member of our legislature may have been unwilling to change the present statute because it might tempt debtors to avoid their honest debts by false swearing. (emphasis ours)
General Motors v. Thomas 237 N.E.2d at 431-32.
The facts of the above referenced case are practically identical to those in this case.
What we are witnessing today is the grafting of a court imposed exception to our Commercial Code statute. This will surely open a legal loophole imposing upon creditors duties which properly belong to the debtor. Those engaged in commercial activities are left in a legal vacuum without legal predictability of notice requisites to debtors prior to sale of secured collateral after default even though our legislative body has utilized proper means of codification which was subsequently correctly interpreted by this Court in McKee. Without doubt we have sown the wind and shall reap the whirlwind.
I respectfully dissent.
BANKS, J., joins this opinion.
NOTES
[1] The parties stipulated: "Your Honor, the parties stipulate that the mail address of the Defendants, Scotty and JoAnn Stewart is Route 2, Box 96, Lake, Mississippi 39092." That process was served on the Defendants in this case at their residence, at this address.
[2] The code in defining "send" authorizes mail notice. Neither registered nor certified mail is required. The majority holding places us in the anomalous position of penalizing Fidelity for sending their notice by certified mail since the crux of their decision hinges upon the return receipt.
[3] Non-receipt of a properly sent notice under the code is immaterial. This is clear from the fact that the code does not specify when receipt of notice is required but states what constitutes the "sending." Silence as to non-receipt indicates the intentional concept that non-receipt is irrelevant.
[4] Some states' Commercial Code permits the parties to agree to the requirement of receipt of notice. Miss. Code Ann. § 75-1-201(26) (1972) of our Code provides: "[A] person `receives' a notice or notification when ... it is duly delivered at any ... place held out by him as the place for receipt of such communications." Since the Stewarts "held out" the address used by Fidelity for contract notice, it is only fair and logical that the Stewarts remain responsible for consequences arising from their act of selecting the address. It would seem to be the rule that where parties to a contract agree on an address for the purpose of receiving notices this is a part of their contractual obligations and any act of the debtor which permits another to obtain the notice should redound to the debtor's detriment.
[5] See 11 ALR 4th 241 (1982), UCC  Secured Party's Notification of Sale, Particularly E., Receipt or Non-Receipt by Debtor. § 14. In Presence of Proof of Proper Sending.
[6] While it makes no difference under the code, the Stewarts in effect made Bernice Morris their agent for receiving notice. The fact that Scotty Stewart did not testify leaves an inference that he did receive the notice; otherwise why did he refrain from testifying and denying it's receipt? Further, the action of the Stewarts and Morris' sharing the same mail box would seem to make them co-venturers with an agency relationship for the purpose of collectively receiving mail at the same address.

Noteworthy are the following mail requirements of the U.S. Postal Service:
151.526 More Than One Family. More than one family, but not more than five families, on rural or highway contract routes, may use the same box, provided a written notice of agreement, signed by the heads of the families, or by the individuals who desire to join in the use of such box, is filed with the postmaster at the distributing office.
153.211 Designation of Agent. Unless otherwise directed, an addressee's mail may be delivered to his employee, to a competent member of the addressee's family, or to any person authorized to represent the addressee. A person or a number of persons may designate another to receive their mail. Designation of another person to receive mail should be in writing, but no special form is furnished or required.
United States Postal Service Domestic Mail Manual, Issue 43 (June, 1992).