588 So.2d 422 (1991)
Edward L. BOOTH
v.
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION.
No. 90-CC-0522.
Supreme Court of Mississippi.
September 11, 1991.
Rehearing Denied October 9, 1991.
*423 Jeremy Eisler, Biloxi, Stanley L. Taylor, Jr., Pascagoula, for appellant.
Jan Garrick, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
The central question raised on this appeal is whether absence of notice to an attorney representing the claimant in an administrative proceeding affecting the claimant's substantial rights constitutes a denial of procedural due process. The claimant, Edward L. Booth, received notice of his employer's appeal before the Board *424 of Review of the Mississippi Employment Security Commission, but his attorney of record did not receive notification.

I. INTRODUCTION
After being fired in January 1989 by his employer, the City of Pascagoula, Edward L. Booth filed a claim for unemployment benefits. The appellate procedure is recounted by the Mississippi Employment Security Commission Board of Review (hereinafter Board):
On February 21, 1989, the Claims Examiner disqualified the above-named individual, hereinafter called Claimant, for benefits under the Mississippi Employment Security Law because the claimant was discharged for misconduct connected with the work. On appeal, the Referee reversed the determination of the Examiner and cancelled the disqualification. The employer, City of Pascagoula Mississippi, then filed further Notice of Appeal to the Board of Review. The case came on for review and decision by the Board of Review at Jackson, Mississippi, on June 12, 1989.
... .
FINDINGS OF FACT:
Claimant was last employed by the City of Pascagoula as an equipment operator for approximately seven years ending on January 16, 1989. The Claimant had previously been discharged by the City but through the efforts of the local union the claimant was reinstated effective October 10, 1988, and was placed on probation for three months. During this probationary period the claimant was absent on several occasions for various reasons. He exhibited threatening behavior on the job. He took one of the City's vehicles without permission and drove it home during his lunch break which was in violation of the rules of the employer. The Claimant was also late in returning from lunch. He also took other workers from the job in violation of the employer's rules. In view of these actions during his probationary period the claimant was discharged on January 16, 1989.
On the basis of these findings, the Board reversed the referee's decision and denied Booth's claim. Booth appealed to the Jackson County Circuit Court, and that court affirmed, finding that the Board's decision was supported by substantial evidence and the applicable law.
Booth appealed to this Court and presented two issues for disposition:
(1) Whether the Mississippi Employment Security Commission's Board of Review's Decision Was Supported by Substantial Evidence?
(2) Whether the Mississippi Employment Security Commission's Failure to Adequately Notify Claimant or Claimant's Counsel Of The Employer's Appeal Deprived Claimant of Due Process?

II. ANALYSIS

A. Issue # 1
Through the first issue, Booth contends that the Board's denial of his claim is not supported by substantial evidence.
Well-settled law in Mississippi holds that judicial review of a Board of Review's ruling is limited. Piggly Wiggly of Bay Springs & Dixieland Food Stores, Inc. v. Miss. Employment Sec. Comm'n, 465 So.2d 1062, 1064-65 (Miss. 1985). Pursuant to statutory law:
In any judicial proceeding ... the findings of the [B]oard ... as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said [circuit] court shall be confined to questions of law.
Miss. Code Ann. § 71-5-531 (1972); see Shannon Eng'g & Constr. Co. v. Miss. Employment Sec. Comm'n, 549 So.2d 446, 448 (Miss. 1989); Miss. Employment Sec. Comm'n v. Blasingame, 237 Miss. 744, 747, 116 So.2d 213, 214 (1959) ("The legislature has clearly provided that judicial review of decisions of the Board ... shall be confined to questions of law."), quoted in Wheeler v. Arriola, 408 So.2d 1381 at 1384 (Miss. 1982); see also Miss. Employment Sec. Comm'n v. Pulphus, 538 So.2d 770, 772 (Miss. 1989); Miss. Employment Sec. Comm'n v. Sellers, 505 So.2d 281, 283 *425 (Miss. 1987); Melody Manor, Inc. v. McLeod, 511 So.2d 1383, 1385 (Miss. 1987). The word "evidence," as used in § 71-5-531, has been interpreted to mean "substantial evidence." Williams v. Miss. Employment Sec. Comm'n, 395 So.2d 964 (Miss. 1981).
Accordingly, this Court should review the record to determine whether, as a matter of law, the Board's fact-finding is supported by substantial evidence. If the evidence is sufficient, then this Court should determine whether, as a matter of law, Booth's actions constitute misconduct.
The record reveals that the City fired Booth in October of 1988 for excessive absenteeism. The local union president, however, helped Booth get his job back through the following agreement:
On agreement between the City of Pascagoula and Local 1944, that Eddie Booth will be on probation for a period of 3 months, without missing any time what-so-ever or he will be terminated.
Dianne Stevens, the City's personnel director, explained that the City did not intend to strictly enforce the agreement. In fact, the City overlooked Booth's absence from several days of work; however, the City could not tolerate twelve absences which occurred during a 60-day portion of the probation period. These absences, in addition to other factors, led to Booth's dismissal for the following reasons:
1. Excessive absenteeism.
2. Threatening to do bodily harm to three (3) crew Foremen.
3. Leaving the job during regular working hours without permission and during this time taking a DUI worker with [him].
Booth does not deny that he committed the acts described in the letter of dismissal; rather, he admits absences on "numerous occasions".[1] He contends that most (but not all) absences were excused. Whether the twelve absences were excused or not is irrelevant in view of the agreement's provision that he not be absent even one day during the 90-day probation period.
Booth also admits that he threatened others  including three supervisors  over a several-year period. But Booth minimizes the seriousness of such conduct. Contrary to Booth's contention, his threats were serious. They all involved threats of bodily harm, and, on at least one occasion, he told one of his supervisors that he would one day be waiting for him after work and "blow him away."
Finally, Booth admits that he borrowed one of the City's vehicles without authorization and while he had a suspended license.[2] However, he asks this Court to overlook this incident because no one told him that he could not borrow the vehicle and because he "did not [borrow] it again."
In sum, the record reveals substantial evidence to support the Board's fact-finding. Moreover, Booth's further contention that the evidence does not fall within the definitional parameters of "misconduct" is devoid of merit. This Court has defined "misconduct" as:
[C]onduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences *426 and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the [S]tatute.
Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss. 1982) (citing Boynton Cab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636 (1941)); see also Miss. Employment Sec. Comm'n v. Borden, Inc., 451 So.2d 222, 225 (Miss. 1984); Miss. Code Ann. § 71-5-513(A)(1)(b) (Supp. 1988) ("An individual shall be disqualified for [unemployment] benefits ... for misconduct connected with his work, if so found by the commission."). Clearly, the various incidents discussed above reflect "misconduct." Excessive absenteeism has been held to be "misconduct" so as to disqualify an employee from unemployment compensation benefits. Mississippi Employment Security Commission v. Martin, 568 So.2d 725, 726 (Miss. 1990). This Court affirms on this issue.

B. Issue # 2

1.
On May 19, 1989, the Chairperson of the Board notified Booth by copy of the letter that the City had appealed the Referee's decision reinstating unemployment benefits.
Dear Sir:
In the matter of the claim for unemployment benefits for subject individual, please be advised that your appeal to the Board of Review has been received. The Board will consider your appeal based upon the record already made and no hearing will be scheduled unless the Board, in its discretion, shall direct that a further hearing be scheduled.
The decision by the Board on your appeal, or notice of further hearing if directed by the Board, will be forthcoming.
 Very truly yours,
 s/Ellie A. Fortner, Chairman
 Board of Review
cc: EDWARD L. BOOTH
1203 SKIP STREET
PASCAGOULA MS 39567
The Board did not mail a copy of the letter to Booth's attorney of record who represented him before the Referee. On June 13, 1989, the Board reversed the Referee's decision and denied benefits.[3] On June 19, 1989, Booth's attorney mailed a letter to the Board: (1) asking why he had not received a notice of the appeal and the Board's decision to review the Referee's decision; and (2) requesting the Board reconsider its decision to deny benefits and provide him "reasonable time" to submit a brief in support of his Booth's position. The Board responded by simply denying his request for reconsideration, and the circuit court affirmed.

2.
Booth now contends that his constitutional rights to due process were violated because his attorney did not receive notification of the City's appeal to the Board.[4] Booth concedes that the Board mailed him a notice, but he contends that this did not satisfy his minimum due process rights  particularly since he is entitled to counsel under a Board regulation. Booth cites two state court decisions to support his contention. In Mountain States Telephone & Telegraph Co. v. Department of Labor & Employment, the Colorado Supreme Court stated:
It follows that when a client has employed an attorney to present his defense *427 to claims in litigation, and notice of this representation by entry of appearance has been given to the opposing party and the court, or other adjudicatory body, all notices required to be given in relation to the matters in controversy, including notice of the decision and entry thereof, should be given to the attorney of record. This basic requirement flows from the attorney-client relationship by which the management, discretion and control of all procedural matters connected with the litigation is invested in the attorney ... If the attorney through no fault of his own is denied notice of the critical determination in the case, and by reasons thereof fails to take procedural steps necessary to preserve his client's rights, fundamental unfairness results. Procedural due process cannot be satisfied when counsel, upon whom a client is entitled to rely, is not notified of decisions affecting his client's interests.

184 Colo. 334, 520 P.2d 586, 589 (1974) (emphasis added by Booth); see also Perry v. Department of Employment & Training, 147 Vt. 621, 523 A.2d 1242 (1987).
The City counters by quoting from a Louisiana Supreme Court opinion:
A provision for notice to the attorney of record may have been beneficial to this plaintiff, but it is not constitutionally required. Due process does not require that the attorney be notified, because notice sent to the interested party is reasonably calculated to give him notice.
Bailey v. Cajun Insulation, 453 So.2d 237, 241 (La. 1984).
The statutory scheme, Miss. Code Ann. § 71-5-1 et seq., and two Mississippi cases discuss the requirement that the "claimant" must be afforded notice. In Williams v. Miss. Employment Sec. Comm'n, 395 So.2d 964, 966 (Miss. 1981), this Court wrote: "We are of the opinion that notice to Ms. Williams was necessary before the [Board could decide to disqualify her]." See also Cane v. Miss. Employment Sec. Comm'n, 368 So.2d 1263, 1263-64 (Miss. 1979) (notice must be mailed to claimant's last known address). These two cases did not involve the issue of whether the claimant's attorney should also have been provided notice; in fact, the cases do not indicate whether the claimants were even represented by counsel.
Rule 5(b) of the Mississippi Rules of Civil Procedure provides some insight into this Court's present stance regarding this question.
(b) Service: How Made. Whenever under these rules service is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon such an attorney unless service upon party himself is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last known address, or if no address is known, by leaving it with the clerk of the court... . Service by mail is complete upon mailing.
Quoted in Covington v. Covington, 459 So.2d 780, 782 (Miss. 1984).
However, the Rules of Civil Procedure are inapplicable to administrative proceedings. See State Oil & Gas Bd. v. McGowan, 542 So.2d 244, 246-47 (Miss. 1989); Miss.R.Civ.P. 1 (governs procedure in circuit, chancery and county courts). In unemployment compensation cases, procedure is governed by regulations prescribed by the MESC. Miss. Code Ann. § 71-5-525 (1972). Additionally, federal law dictates:
An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. This notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and pecularities of the case these conditions are reasonably met, the constitutional requirements are satisfied.
Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, *428 657, 94 L.Ed. 865, 873 (1950), quoted in Covington, 459 So.2d at 782.

3.
In view of the foregoing, one may conclude that notifying the claimant (client) only and not the attorney would satisfy minimum due process requirements so long as such notice is "reasonably calculated" to apprise the claimant of necessary information. Therefore, this Court at this time does not hold that there is a constitutional requirement for notice to the attorney for the claimant as long as notice to the claimant is "reasonably calculated" to apprise the claimant of necessary information. However, this Court strongly recommends to the Commission that it consider amending its procedural rules to require notice to both a claimant and the attorney of record for the reason set forth in the Mountain States case.
However, an administrative board must afford minimum procedural due process under the Fourteenth Amendment to the United States Constitution and under Art. 3, § 14 of the Mississippi Constitution consisting of (1) notice and (2) opportunity to be heard. State Oil & Gas Board v. McGowan, supra, at 248; citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). This process is required in cases in which a right or interest requiring constitutional protection is involved. "Unemployment benefits are of the same nature, for purposes of this analysis, as welfare or other public assistance benefits ... and therefore, rise to the level of constitutionally protected property rights." Perry, 523 A.2d at 1243.
The Board of Review makes its decision on the basis of the evidence previously submitted before the Referee, or by directing the taking of additional evidence. Miss. Code Ann. § 71-5-523 (1972). Its findings of fact, if supported by substantial evidence and in the absence of fraud, are conclusive. Miss. Code Ann. § 71-5-531 (1972). As the factfinder in this progression of hearings, the Board of Review offers the last opportunity that a claimant has to affect the factual findings of the case. Appeals to the Circuit Court and Supreme Court are based on the record. For this reason the last opportunity to present argument, orally or by written brief, to the Board of Review as the factfinder is a crucial juncture in the appeals process.
The Court holds that sufficient notice to the claimant was given for the Board hearing, and that substantial evidence exists to uphold the MESC ruling. The Court therefore affirms the Circuit Court, but recommends to the MESC that it re-evaluate its rules regarding notice and process.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Booth's absences were primarily attributable to his consumption of alcohol. See, e.g., Vol. II, at 120-24.

For example, Booth introduced a document during a hearing before the Referee to prove that he had a "medically-related" excuse for being absent. This document, however, reveals a hospital visit he made after he "drank some wine" and vomited. This visit occurred two months after the City fired him in January 1989. Id. at 124.
[2] A DUI arrest resulted in the suspension. Vol. II, at 105.
[3] No hearing was held. The MESC simply relied upon the record provided it by the Referee (including a transcript of the hearing before the Referee). Vol. II, at 136.
[4] Booth explains that, because his attorney received no notification, he was not provided an opportunity to attend the Board hearing and, therefore, was unable to exercise his right to question the impartiality of the MESC Board members and defend his position. He contends that the absence of his attorney from the hearing left the Board with "arbitrary uncontrolled discretion." Appellant's Brief at 13-14. In short, Booth contends that unemployment benefits are a property interest of which the federal and state constitutions entitle an individual to due process protection.

NOTE: In his Main Brief, Booth questioned the impartiality of the Board members. Appellant's Brief at 13-14. However, in his Reply Brief, Booth withdrew this issue. Appellant's Reply Brief at 7-8.