724 So.2d 466 (1998)
Brenda S. HOLT, Appellant,
v.
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION, Appellee.
No. 97-CC-00552COA.
Court of Appeals of Mississippi.
December 8, 1998.
*467 Pro Se, Attorney for Appellant.
Albert B. White, Madison, Attorney for Appellee.
Before McMILLIN, P.J., COLEMAN and SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Brenda Holt brought a claim in the Mississippi Employment Security Commission (MESC) regarding her dismissal from employment. Holt did not timely seek review of the appeals referee's denial of benefits to the Board of Review. The Board of Review and the circuit court found the untimely appeal to end Holt's right to contest the decision. Holt appeals to this Court, claiming that she never received notice of the decision denying benefits, and therefore should not be held to have untimely appealed from that decision. We find that insufficient evidence was presented to overcome the presumption of proper delivery of the notice. Consequently, we affirm.

STATEMENT OF FACTS
¶ 2. Holt was an employee at Four Points Restaurant in Yazoo City. The restaurant manager counseled Holt about serving coffee in an improper cup. There appears to have been an earlier discussion regarding the same error. According to the employer, Holt became irate and created a scene in the restaurant. She was asked either to calm down and go back to work or to go home. The manager indicated in her testimony that the discussion between the two was fairly heated, with some sharp words exchanged. Holt's response to the choice was "do you mean you're firing me?" The manager said, "[T]ake it for whatever it's worth. But hush your mouth."
¶ 3. Holt left the restaurant at that time, and as the manager put it, "she left me with no help." The manager testified that Holt never returned to work.
¶ 4. Subsequently Holt filed for unemployment benefits.
¶ 5. The procedural chronology is central to our resolution of the case:
1. November 22, 1996, notice sent that claims examiner disqualified Holt from benefits, finding that Holt had been discharged for misconduct; that decision was timely appealed.
2. December 19, 1996, notice sent that appeals referee affirmed the claims examiner.
3. January 14, 1997, Holt appealed from the referee's decision.
4. February 7, 1997, MESC Board of Review dismissed the appeal as having been untimely.
5. February 11, 1997, Holt appealed to the circuit court.
6. April 4, 1997, the circuit court affirmed the Board of Review's decision.
7. April 9, 1997, Holt appealed from the circuit court.

DISCUSSION
¶ 6. The decision of the Board of Review, which was affirmed by the circuit court, relied upon the following statute:

*468 The parties shall be duly notified of such [appeal] tribunal's decision, together with its reasons therefor, which shall be deemed to be the final decision of the Board of Review unless, within 14 days after the date of notification or mailing of such decision, further appeal is further initiated [to the Board of Review].
Miss.Code. Ann. Section 71-5-519 (Rev. 1995). It is undisputed that the appeal referee mailed notice of the affirmance of denial of benefits on December 19, 1996. Considerably more than 14 days later, on January 14, 1997, Holt filed her appeal to the Board of Review. The analysis of the Board of Review was simply this:
The Referee's decisions was mailed to all interested parties to their last known address on December 19, 1996.
The appeal was not filed to the Board of Review until January 14, 1997. The Referee's decision had become final and the appeal is herewith dismissed.
¶ 7. The Board of Review's decision was not based upon considering any evidence regarding a possible failure of notice, and such evidence was implicitly found irrelevant. Holt's explanation that was filed with her notice of appeal to the Board of Review stated this:
I didn't receive the letter they said they mailed to me. I called to see about this they said they mailed it. I didn't get it.
¶ 8. This notice states that she attached letters from neighbors indicating that "we've had lots of trouble with our mail here. If I need to and it will help, I'll get everyone on my mail route to sign a paper to this. People were all the time getting other people's mail." The appellate record does not have any attachments from neighbors.
¶ 9. Thus this case raises the issue of whether the Section 71-5-519 obligation to file within fourteen days of the mailing of notice is absolute. If in fact the claimant has evidence that might convince a fact-finder that she did not receive the notice, despite having given the MESC the proper address to use, does this statute prevent the consideration of that evidence? In other words, does the statute only require mailing, or does it require delivery?
¶ 10. The leading case under this provision dealt with an MESC practice that allowed a claimant three extra days to respond to mailed notice. Wilkerson v. Mississippi Employment Security Commission, 630 So.2d 1000, 1001 (Miss.1994). The court found that even if the MESC had authority to interpret the statute to permit a three-day extension for mailing, that interpretation should be adopted only after rule making procedures were followed. Id. at 1002. In the absence of a rule, and none existed then nor now, the strict fourteen-day requirement applied. Id. Here, we are not dealing with a systematic relaxing of the requirements of the statute, in which all appellants received more time than the statute contemplates. Instead, we are determining whether the statute by its terms overrides a claimant's argument and even her proof that the mailed notice was never received.
¶ 11. In Wilkerson the court stated that no excuse was accepted in civil cases for failing to file a timely notice of appeal. Id. at 1002. The case relied upon was discussing appeals from trial courts to the supreme court. Tandy Electronics, Inc. v. Fletcher, 554 So.2d 308, 310-11 (Miss.1989). The Tandy court itself recognized that the rules governing appeals permitted a trial court to grant an extension "upon motion filed not later than 30 days after the expiration" of the appeal time. M.R.A.P. 4(g). The problem in Tandy was that appellant's counsel did not request such an extension.
¶ 12. Here, we are not addressing appeals from trial courts to an appellate court, but instead the internal appellate procedures of an administrative agency. We therefore need to understand the reason that a timely filing of a notice of appeal from a trial court to an appellate court is an absolute requirement before we can say that the same unalterable rule applies to what occurs within the MESC. We note that a trial court clerk has no obligation by statute or rule to send notice of a final civil judgment to the parties. The clerk in criminal cases "shall make a diligent effort to assure that all attorneys of record have received notice" of the entry of an order *469 or judgment, but "best efforts" is far from an absolute requirement. URCCC 11.05 ("Rule Series 6 through 12 are applicable only to criminal proceedings." URCCC 6.01). Thus parties in civil suits are obligated to make sufficiently frequent inquiries with the court clerk to determine whether a judgment has been entered in order to avoid the time for post-trial motions or appeal from expiring. M.R.A.P. 4 cmt.
¶ 13. Quite differently, the MESC's statute requires the commission to send notice of a decision at each level of the administrative process. As already quoted, the "parties shall be duly notified of such [appeal] tribunal's decision, together with its reasons therefor...." Miss.Code Ann. § 71-5-519 (Rev.1995). Though the MESC statutes do not define the word that is key for our purposes, the normal definition is that to "`notify' one of a fact is to make it known to him; to inform him by notice." BLACK'S LAW DICTIONARY (6th ed.1990) at 1064. Therefore, unlike the approach for a normal judgment in civil litigation, the State has been given by statute an affirmative duty to make the claimant aware of a decision. More than just making a decision and filing it is needed. Holt argues that more than just mailing is required as well.
¶ 14. The supreme court has previously recognized that an MESC decision does not automatically and unalterably start the period for appeal. The Wilkerson court stated that it had "no quarrel, either, with a relaxation" of the MESC fourteen-day rule if "good cause" was shown. Wilkerson, 630 So.2d at 1002. The referenced good cause was a failure to comply with the statute by not mailing notice to the last known address. Id. at 1002. "Good cause" would not be needed for that, because under the statute being discussed in Wilkerson notice expressly must be "mailed to his [the claimant's] last-known address." Miss.Code Ann. § 71-5-517 (Rev.1995). That statute is for appeals from the claims examiner to the first level appeal. Id. The statute that we are applying is for appeals from that first appellate level to the next. Miss.Code Ann. § 71-5-519 (Rev.1995). It merely says that appeal must be within fourteen days "after the notification or mailing of such decision," without referring to the last-known address. Id. We find that the legislature did not mean for different procedural rules to apply regarding notice of the initial determination than for notice of the decision of an appeals tribunal. Consequently the phrase "last-known address" should be implied in the statute that we are applying in Holt's appeal.
¶ 15. We do not reach the issue of whether receipt of notice is a due process necessity, but only address whether it is a statutory demand. Nonetheless, the supreme court intimated that there was a due process component to the notice provided by the MESC. Booth v. Mississippi Employment Security Commission, 588 So.2d 422, 427-428 (Miss. 1991). The court held that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." Id. (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The quote itself refers to alerting interested parties of the "pendency" of the action. Holt had ample notice of that since she initiated the MESC process. Using this authority, the Booth court found that MESC notice being sent solely to the claimant satisfied due process but strongly encouraged the MESC also to send notice to the attorney. Booth, 588 So.2d at 428.
¶ 16. As already discussed, the fact that a public record is immediately created of a final court order has generally been considered adequate to give notice to a litigant aware of the proceedings and to require that post-judgment steps be timely commenced. The supreme court did once hold that it did not "know of any appellate court which requires that parties police the docket and fail to do so at their peril." City of Gulfport v. Saxton, 437 So.2d 1215, 1217 (Miss.1983). Further, in Booth the supreme court quoted a Colorado case that due process mandates "notice of the critical determination in the case," and failure to receive that notice can excuse an attorney's failure "to take procedural steps necessary to preserve his client's rights...." Id. at 427 (quoting Mountain *470 States Telephone & Telegraph Co. v. Department of Labor & Employment, 184 Colo. 334, 520 P.2d 586, 589 (Colo.1974)).
¶ 17. Returning to the language of the statute, we find that its requirement that the parties "shall be duly notified" demands more than the act of mailing but also insists on the result of delivery. Booth suggests that due process may require the same. Under the MESC appeal statutes a good cause explanation can be presented by the party who wishes to appeal as to why mailing to the last-known address was not "reasonably calculated, under all the circumstances, to apprise" her of the decision. A claimant cannot evade appellate obligations by refusing to pick up mail or to read it, but can show that for reasons beyond that party's control mail was not received. Cane v. Mississippi Employment Security Commission, 368 So.2d 1263, 1264 (Miss.1979) ("it would be unfair to penalize Cane because of a mistake not of his own making").
¶ 18. In many other situations case law has made clear that a litigant may contest the delivery of mailed notice. Sending notice by first class mail is a simple and inexpensive means that is usually effective for providing interested parties with information. A more conclusive kind of mailed notice would be through certified or registered letters that provide a return receipt. Even then, a mail return receipt does not preclude contrary evidence.
¶ 19. A return receipt "establishes a presumption"; it may be rebutted, but a "mere denial of receipt is insufficient to create a triable issue of fact." Fidelity Financial Services v. Stewart, 608 So.2d 1111, 1113 (Miss.1992) (quoting Carter v. Allstate, 592 So.2d 66, 75 (Miss.1991)). Fidelity involved a Uniform Commercial Code provision for notice of liquidation of collateral. Fidelity, 608 So.2d at 1112. Carter dealt with notice of cancellation of an insurance policy. Carter, 592 So.2d at 73. A certified or registered letter provides significant evidence of receipt. If a return receipt only creates a rebuttable presumption of delivery, then all the more should use of normal first class mail create no more than a presumption. "The rule is well settled that proof that a letter properly directed was placed in a post office, creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." Hagner v. United States, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932) (citations omitted); see also Threatt v. Threatt, 212 Miss. 555, 559, 54 So.2d 907, 908-09 (1951). Once the presumption is established, the burden shifts to the party denying receipt to present evidence to rebut the presumption. Threatt, 212 Miss. at 559, 54 So.2d at 909.
¶ 20. The supreme court has recently interpreted the effect of notice of a pretrial conference and of a trial setting being sent to parties, and one party arguing that it never received the notice. Thames v. Smith Insurance Agency, Inc., 710 So.2d 1213, 1214 (Miss.1998). Since he alleged that he was unprepared because of failure to receive notice, the counsel refused to participate in the trial. Id. at 1215. Civil Rule 40(b) requires that the court clerk notify the attorneys at least five days before the date at which a trial docket is to be set, and also mail notice within three days after a case is placed on the docket. M.R.C.P. 40(b). As in the statute at issue here, there is no specific provision in Rule 40 dealing with defects in delivery. Instead, the Thames court applied a "presumption that mail deposited, postage prepaid and properly addressed is timely delivered to the person addressed." Id. at 1216. The presumption was found to be "necessary in these circumstances lest the work of the Court be unduly hampered by false and irrefutable claims of non-delivery." Id. In other words, proof of the sending of mail, postage prepaid to the proper address, creates a presumption of timely delivery under Rule 40, but the presumption is rebuttable.
¶ 21. The evidence to rebut in Thames was a statement by the relevant party that the notice was not received, and proof that the last digit of the zip code was incorrect. Id. at 1214. At a hearing on the issue no evidence was introduced that the notices had been returned and no other evidence was offered. Id. at 1217. This evidence was found by the trial court to be insufficient to *471 overcome the presumption. The supreme court found that the error in the address removed the presumption altogether, but affirmed because there was sufficient evidence of delivery. Id. We find that these are the proper standards to apply in determining whether an MESC notice was received.
¶ 22. One final relevant authority is the appellate rule permitting good cause to be shown for failure to meet the deadline for timely appeal. The comment to the rule states that good cause can be "shown where a timely mailed notice was late because of unanticipated and uncontrollable delays in the mail." M.R.A.P. 4 cmt.
¶ 23. The presumption of delivery of properly addressed and postage prepaid mail is a strong one. We have before us some but not all of the facts that Holt wished to use to overcome the presumption. Holt does not contend that the address on the notice of the appeals referee's decision was incorrect. It was the address used on the notice of the claims examiner's denial of benefits, and Holt has never argued that she failed to receive the earlier or any later notices mailed to this address. No one questions that the postage was prepaid. Her own statement was that she never received the letter. She apparently included with her late-filed appeal to the Board of Review statements from neighbors that they also had "had lots of trouble with our mail here." Those statements do not appear in the record, and it is the appellant's burden to provide a record adequate to review her issues. Shelton v. Kindred, 279 So.2d 642, 644 (Miss. 1973).
¶ 24. If the neighbors' statements were assertions of general problems, they would carry no more weight than does a general denial of receipt. The Thames court found a denial by itself to be inadequate, as that raises the specter of "false and irrefutable claims" that would hamper the work of courts and by analogy, administrative agencies. A denial of receipt is as difficult to refute as is a presumption of delivery. The law chooses between those two possibilities by recognizing delivery as the controlling presumption. There must be something directed to the specific relevant notice before a fact question arises of whether a properly addressed letter was not delivered. In Thames the court spoke of proof that the notice was returned to the sender. That does not exhaust the possibilities by any means. What is needed is sufficient evidence to convince a fact-finder that the specific document was never received by the claimant.
¶ 25. This is a difficult burden, but some specific evidence is needed or else the presumption is ephemeral and has no more weight than a statement that the notice was sent. There is a serviceable presumption that the vast majority of mail is properly and relatively timely delivered. A trial judge must conclude that the relevant letter falls into the substantial majority of properly and timely delivered mail unless meaningful evidence undermining that presumption is received. If every so often a properly addressed, postage prepaid first class letter is not delivered, the position that the relevant letter was one of those exceptions must be proven with some degree of specificity.
¶ 26. In summary, we disagree with the MESC's treatment of Holt's argument regarding nondelivery. It was necessary for the MESC to consider the evidence offered by Holt and determine whether it overcame the presumption. However, since the only evidence in the record is Holt's denial of receipt, the presumption was not overcome. Though it appears that the affidavits from neighbors would not have been any more substantial, we need not consider what they might have shown since they are not in the record. The appeal was properly dismissed at the MESC.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY AFFIRMING THE DECISION OF THE MISSISSIPPI EMPLOYMENT SECURITY COMMISSION IS AFFIRMED.
McMILLIN, P.J., and COLEMAN, HINKEBEIN and KING, JJ., concur.
THOMAS, P.J., concurs in part and dissents in part with separate written opinion, joined by BRIDGES, C.J., and DIAZ, HERRING and PAYNE, JJ.
*472 THOMAS, P.J., concurring in part, dissenting in part:
¶ 28. I concur in the result reached by the majority. I dissent from all that portion of the opinion which expands what I believe to be clear-cut precedent by our supreme court, and in the process, usurps the fact-finding and authority of the Mississippi Employment Security Commission.
¶ 29. In Wilkerson v. Mississippi Employment Sec. Comm'n, 630 So.2d 1000 (Miss. 1994), cited by the majority, the claims examiner notified the employer by correct mailing address of its employee's eligibility for benefits. Id. at 1001. The employer filed its notice of appeal fifteen days after such notification, one day outside the time permitted by statute. Id. The Commission had an unwritten practice of allowing a three day extension of the fourteen day rule and allowed the appeal to proceed. Id. In dismissing the employer's appeal, our supreme court could not have been any clearer. Id. at 1002-03. The court held that since the Commission was an administrative agency and a creature of statute, it could only exercise those powers expressly granted or necessarily implied in its grant of authority. Id. at 1001. Any exercise of power not granted or implied is void, and that the statute did not contain a provision allowing the Commission the power to modify the statute by arbitrarily or capriciously adding time to an appeal. Id. at 1002. The court went on to hold that when "the statute is clear and unambiguous, no room exists for judicial construction, and the courts are obliged to apply the clear meaning of the statute." Id.
¶ 30. The majority on page four of its opinion states:
The Wilkerson court stated that it had "no quarrel, either, with a relaxation" of the MESC 14 day rule if "good cause" was shown.
¶ 31. The full text of Wilkerson makes it clear that the supreme court would have no quarrel with a relaxation of the fourteen day rule if the Commission did so by published rule, which it had not done then, and nothing has changed since. Id. at 1002.
¶ 32. The "good cause" relaxation of the fourteen day rule mentioned in Wilkerson refers to the case of Cane v. Mississippi Employment Sec. Comm'n, 368 So.2d 1263 (Miss.1979), wherein the Commission mailed its notification to the wrong address through no fault of Cane. Wilkerson, 630 So.2d at 1002. Here, notification without question was sent to Holt's correct address; she simply asserted that because of problems with the mail she did not get the notice.
¶ 33. Wilkerson is explicit and creates no exception which the majority attempts to engraft upon it. Filing deadlines are one area of the law which may at times seem harsh, but which have been consistently adhered to by our supreme court. Holt's notification was without question sent to her correct mailing address. That should end the inquiry. She filed too late.
¶ 34. The majority exceeds its authority and expands appellant's excuses for failing to meet deadlines. Ironically, in so doing in this particular case, the majority then proceeds to usurp the Commission's fact-finding function by deciding Holt factually failed to meet her burden to overcome the presumption of proper delivery. At the very least, in announcing its ruling, I would have thought the majority would have remanded this matter to the Commission for them not us to factually determine whether Holt made out a case to be excused from filing too late under the expanded rule created today.
¶ 35. The cases referred to by the majority to support its holding are good law and the quotes excised from them valid statements but none of them have anything whatsoever to do with the MESC case at bar.
BRIDGES, C.J., and DIAZ, HERRING and PAYNE, JJ., join this separate written opinion.