# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CC-01285-COA

**COE LAW FIRM PLLC**                                                          **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                                              **APPELLEES**
**EMPLOYMENT SECURITY AND ANGELA M.**
**OVERSTREET**

DATE OF JUDGMENT:                    12/13/2022
TRIAL JUDGE:                         HON. DEWEY KEY ARTHUR
COURT FROM WHICH APPEALED:           RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              THOMAS JON-WILLIAM BELLINDER
ATTORNEY FOR APPELLEES:              ALBERT B. WHITE
NATURE OF THE CASE:                  CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                         AFFIRMED - 01/16/2024
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.**

**McDONALD, J., FOR THE COURT**:

¶1.     The Coe Law Firm PLLC appeals from the Rankin County Circuit Court's order

dismissing Coe's appeal of the Mississippi Department of Employment Security's (MDES)

Board of Review's order upholding an administrative law judge's (ALJ) grant of

unemployment benefits to Angela Overstreet, an employee Coe had terminated.  Coe

contends that its appeal of the claims examiner's decision to the ALJ was wrongfully

dismissed and violated its due process rights because the law firm never received notice of

the ALJ's rescheduled hearing.  In addition, Coe claims that Overstreet was guilty of

misconduct that disqualified her from receiving unemployment benefits.  Having reviewed

the record, the arguments of counsel, and relevant caselaw, we affirm the circuit court's order

of dismissal.

**Facts**

¶2. Overstreet began working as a legal assistant for the Coe Law Firm on December 15, 2021. Coe was located at 200 E. Government Street, Brandon, Mississippi, and according to the Mississippi Secretary of State's business records, its principal owner was Joshua Coe. The Mississippi Bar Directory lists Coe's office phone number as (601) 824-5040.

¶3. The MDES records reflect that Overstreet was terminated from her position on April 1, 2022, after a meeting with Thomas Bellinder. According to the Mississippi Bar Directory, Thomas Bellinder is a lawyer affiliated with his own law firm, which is also located at 200 E. Government Street in Brandon but has a phone number of (601) 487-9340. Although it is unclear in what capacity Bellinder was operating on April 1, 2022, when Overstreet was terminated, Overstreet said, and Bellinder later confirmed, that he was the person who terminated her from her position. Whether Bellinder acted because he shared Overstreet as an employee with Coe or whether Bellinder acted simply as Coe's agent or Coe's attorney, there is no dispute that Bellinder fired Overstreet.

¶4. Overstreet applied for unemployment benefits, and her case was reviewed by a claims examiner. She told the claims examiner that Coe terminated her for no reason other than that they had decided to "go in a different direction." She indicated that she had received no warnings related to any other reasons for her discharge. Overstreet also told the examiner that she was unaware of any company policy or rule violation that justified her discharge.

¶5. The claims examiner interviewed Bellinder concerning Overstreet's separation. It is

2

unclear what phone number the examiner used to reach Bellinder. According to MDES records, the phone number for the "employer" law firm was (601) 487-9340 (Bellinder's number). However, Overstreet gave MDES a second number for the employer law firm: (601) 824-5040 (Coe's number). The examiner's notes merely said that Bellinder was interviewed "by telephone," and that Bellinder provided specific information about the reasons for her termination either as, or on behalf of, Overstreet's employer.

¶6. According to the claims examiner's notes, Bellinder said that when Overstreet was first hired, she had performed the job according to company standards. But Bellinder claimed that by the end of her ninety-day probationary period, Overstreet had to be discharged because she was unprofessional, failed to perform tasks assigned, failed to answer and return phone calls properly, and did not follow the "clean desk" protocol.[1] Specifically, he said that Overstreet "was seen via the company's ring doorbell camera leaning outside the front door and spitting." Bellinder felt that by doing this, "Overstreet created a disgusting and unprofessional view of the law firm."

¶7. Bellinder agreed that he told Overstreet that the firm was going in a different direction and that he did not give her the specific reasons for her termination. But he said she was warned several times about her poor job performance. The examiner recorded Bellinder's

---

[1] Specifically, Bellinder said that Overstreet violated the handbook's "Clean Desk Policy," which states:

> Clean Desk Policy: Employees are required to ensure that all sensitive/confidential information in any form is secure in their work area at the end of the day and when they are expected to be gone for an extended period. Computer workstation must be locked when workspace is unoccupied.

comments as follows:

> The claimant's performance issues include being away from her work station without notifying her supervisor. The claimant failed to make sure all incoming calls were answered and returned in a timely manner. The claimant's desk was in disarray with papers sprawled all across her work station. The claimant failed to follow specific instructions involving the email protocol. The claimant refused to perform certain tasks asked of her because she did not have the capability/skills to complete the task.

The examiner also noted that Bellinder did not provide dates when these incidents occurred but stated Allison M. Christian, the senior litigation paralegal, had given Overstreet verbal warnings about her deficient job performance on January 4, 2022; February 2, 2022; and March 21, 2022.

¶8. After reviewing this information with Overstreet, the claims examiner reported that Overstreet denied ever being warned and said that the only meeting with Bellinder and Christian occurred when she was terminated. She also denied the specifics of Bellinder's accusations concerning her work performance.

¶9. After considering both interviews, the claims examiner determined that Overstreet was entitled to benefits because Coe failed to show that she was discharged for misconduct connected to her work. On April 14, 2022, a notice of the examiner's decision was mailed to Coe at its mailing address: Coe Law Firm, 200 E. Government Street, Brandon, Mississippi 39042.

¶10. Apparently, Coe received the examiner's decision because it appealed on April 22, 2022. According to the MDES appeal record, a pre-hearing notice was sent to the "Coe Law Firm, PLLC" at 200 E. Government Street, Brandon, Mississippi. The notice informed Coe

4

that it would receive a notice of the "de novo" hearing date within fifteen days, and it should then submit any documents to the appeals department before the date of the hearing.

¶11.   On April 26, 2022, MDES sent the notice of hearing to both Coe at its same address and to Overstreet.  The notice advised both that the telephonic hearing before the ALJ was set for May 18, 2022.  The notice of hearing indicated that the telephone contact information that the MDES had for Coe was (601) 487-9340 (Bellinder's number).  If this were incorrect, the notice stated in bold lettering that Coe was to submit the correct contact name and phone number at least five days before the hearing.  The notice also provided in bold print: "Failure to provide your contact information, or the inability to receive the call at the time of the scheduled hearing, may result in the loss of this case."

¶12.   Coe apparently received the notice and requested a continuance, which was granted, and the hearing was continued to May 20, 2022.  On May 5, 2022, MDES sent a notice of the new date to Coe at the same Government Street address.

¶13.   On May 20, 2020, at the appointed time, the ALJ convened the hearing which was recorded.  The ALJ telephoned Overstreet, who was available, but the ALJ could not reach the representative for Coe at the number it had listed in the notice, (601) 487-9340 (Bellinder's number).  An automated service answered, saying:

> Thank you for calling the Bellinger [sic] Law Firm.  You may press zero at any time to speak to one of our associates.  Your call is very (Beep) Please stay on the line while your call is transferred to the operator.

When the call was transferred, the ALJ encountered another recording, saying that all associates were on the phone or assisting other clients.  The message indicated that the ALJ

5

could leave a message for Bellinder or Christian. Then the line disconnected. The ALJ noted for the record that she would give the employer ten minutes to become available for the hearing. The hearing transcript reflects that the ALJ attempted to call the law firm back ten minutes later and received the same automated messages. The ALJ stated she would give the employer another hour to contact the MDES, and if there was no contact, the ALJ would make a decision based on the employer's non-participation.

¶14. On May 23, 2022, the ALJ dismissed the appeal, determining it was abandoned because Coe failed to appear. A notice of the decision was mailed that same day to Overstreet and to Coe at its 200 E. Government Street, Brandon, Mississippi address.

¶15. On May 31, 2022, Coe appealed the ALJ's decision to the Board of Review. The appeal was submitted by a letter on "Coe Legal Group, PLLC" letterhead, in which Coe stated that it had not received the notice of re-hearing setting the matter for May 20, 2022 date. However, it is unclear who sent the appeal letter because it had no closing and was unsigned. Moreover, the appeal letter had no affidavits attached and contained no additional documents to provide a reason for the law firm's alleged lack of receipt of the re-hearing notice. The only enclosures were the notice of the original hearing date and the ALJ decision notice. The letter further detailed specific instances of Overstreet's poor job performance that Coe felt supported a finding of misconduct. The law firm also submitted a form "Notice of Appeal" to the Board of Review.

¶16. On June 1, 2022, the Board of Review acknowledged receipt of the appeal and indicated it would make its decision based on a review of the record unless it determined that

6

a hearing was warranted. In this case, the Board did not hold a hearing, and on June 3, 2022, the Board summarily affirmed the ALJ's decision dismissing the law firm's appeal. The Board mailed a notice of its decision to Coe at 200 E. Government Street, Brandon, Mississippi, on June 18, 2022.

¶17. On June 27, 2022, Bellinder appealed the Board of Review's decision to the Rankin County Circuit Court on behalf of Coe. In the notice of appeal, Coe contended that it never received the notice of the ALJ's second hearing. The notice further detailed the law firm's litany of instances of poor job performance by Overstreet that it contended constituted misconduct. But the appeal failed to include any affidavits or other verified proof of these allegations.

¶18. On July 19, 2022, the MDES filed an answer that included the MDES records of the case as well as the transcript of the ALJ proceedings. On December 13, 2022, after considering Coe's petition and the MDES response, the circuit court affirmed the Board of Review's ruling, finding that there was no evidence of fraud, that the findings were supported by the evidence, and that the law was properly applied to the facts.

¶19. Bellinder, on behalf of Coe, appealed the circuit court's decision on December 19, 2023. Coe raises the following issues on appeal: whether it was denied due process when the ALJ dismissed the appeal when Coe had a good reason for not participating in the ALJ hearing, and whether Overstreet engaged in disqualifying misconduct.

**Standard of Review**

¶20. An appellate court's standard of review of an administrative agency's decision

7

mandates that "[a]n agency's conclusions must remain undisturbed unless the agency's order: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates a statutory or constitutional right of the complaining party." *Miss. Dep't Emp. Sec. v. Good Samaritan Personnel Servs. Inc.*, 996 So. 2d 809, 812 (¶6) (Miss. Ct. App. 2008).

> We employ an abuse-of-discretion standard when reviewing a trial court's decision to affirm or reverse an administrative agency's findings. We must review the record to determine whether there is substantial evidence to support the Board['s] . . . findings of fact, and further, whether, as a matter of law, the employee's actions constituted misconduct disqualifying him from eligibility for unemployment compensation.

*Vector Transp. Co. v. Miss. Dep't of Emp. Sec.*, 350 So. 3d 289, 292 (¶6) (Miss. Ct. App. 2022) (citations and internal quotation marks omitted). "A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise." *Williams v. Miss. Dep't of Emp. Sec.*, 126 So. 3d 149, 150 (¶2) (Miss. Ct. App. 2013) (citing *Sprouse v. Miss. Emp't Sec. Comm'n*, 639 So. 2d 901, 902 (Miss. 1994)). In unemployment benefits cases, the burden of proving an employee's misconduct rests with the employer, who must present evidence that is clear and convincing. *Smith v. Miss. Dep't of Emp. Sec.*, 158 So. 3d 1220, 1222 (¶17) (Miss. Ct. App. 2015).

**Discussion**

¶21.    The entitlement to and procedure for obtaining unemployment benefits is found in Mississippi Code Annotated sections 71-5-501 to -547 (Rev. 2021). These statutes establish the eligibility and ineligibility of a claimant to receive unemployment benefits (section 71-5-511 and section 71-5-513, respectively). Specifically,

[a]n individual shall be disqualified for benefits:

(1)(b) For the week, or fraction thereof, which immediately follows the day on which he was discharged for misconduct connected with his work, if so found by the department, and for each week thereafter until he has earned remuneration for personal services performed for an employer, as in this chapter defined, equal to not less than eight (8) times his weekly benefit amount, as determined in each case.

(c) . . . the burden of proof of misconduct shall be on the employer.

Miss. Code Ann. § 71-5-513(1).

¶22. The definition of "misconduct" has remained essentially unchanged since the Mississippi Supreme Court defined it in *Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982), which held that "misconduct connected with work" is

conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent, or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, come within the term.

*Vector Trans. Co.*, 350 So. 3d at 293 (¶10).

¶23. The statutes also outline the procedure for the initial determination of an unemployment claim (section 71-5-517) as well as the appeals afforded to the claimant and the employer should he or she challenge an unfavorable decision (*see* Miss. Code Ann. §§ 71-5-519 to -533). After the initial determination of benefits is made by a claims examiner, either party may appeal and receive a de novo hearing before an administrative law judge. *Id*. at § 71-5-519.

¶24. Pursuant to section 71-5-519 and MDES Regulations 200.02 through 200.04, if a claims examiner's decision is appealed, the ALJ will undertake a telephonic hearing de novo

during which all parties can present evidence and give testimony. Under Regulation 200.02(a)(2), the appeals department will schedule the hearing, and "[a]t least seven (7) days prior to the scheduled hearing date, a Notice of Hearing shall be sent by regular mail or electronically to the parties interested in the determination being appealed." Proof of mailing the notice postage prepaid to the proper address creates a presumption of timely delivery. *Holt v. Miss. Emp. Sec. Comm'n*, 724 So. 2d 466, 470 (¶20) (Miss. Ct. App. 1998). If proper notice was given, the ALJ may render a decision even if a party fails to participate in the ALJ hearing, although the defaulting party is given an opportunity to show good cause for failing to appear.[2]

---

[2] MDES Regulation 200.05, "Disposition Without Full Hearing," provides:

(A) The Board of Review or the Appeals Department may make informal disposition of any adjudicatory proceeding by default when the appealing party or the party with the burden of proof fails to appear at the scheduled hearing. A party shall be deemed to have failed to timely appear at a hearing when the party fails to appear as provided in the notice of hearing, including calling an Appeals Department telephone number or providing in advance a telephone number as required by the notice of hearing, or by failing to be present at the telephone number provided by the party for ten (10) or more minutes past the scheduled start time of the hearing.

(B) Any such default may be set-aside by the Board of Review or Appeals Department for good cause shown. The procedure for good cause hearings is as follows:

(1) No later than fourteen (14) days after the date of the postal or electronic mailing of the decision, upon written request setting forth the reasons for failing to appear, the Appeals Department may provide a good cause hearing to a party that failed to appear at the hearing. If the Appeals Department determines that good cause exists, it will conduct a hearing on the underlying substantive issues. Similarly, upon written request setting forth the reasons for failing to appear at a hearing, the Board of Review may provide a good cause hearing to the appealing party. A hearing on the underlying

10

Good cause is established when there is sufficient evidence to show that a party failed to receive the mailing due to delays in the mail or because of an act beyond the party's control. Moreover, there is a presumption that the majority of mail is delivered on a timely basis. Mere denial that the notice was received, without supporting evidence, fails to constitute good cause for failing to timely appeal.

*Miss. Emp. Sec. Comm'n v. Marion Cnty. Sheriff's Dep't*, 865 So. 2d 1153, 1157 (¶10) (Miss. 2004).

> **I.      Whether the Coe Law Firm was denied substantive or procedural due process when the ALJ dismissed Coe's appeal of the claims examiner's decision to grant Overstreet benefits.**

¶25.    In this case, the notice of Overstreet's ALJ hearing clearly stated the obligation of all parties to provide the ALJ with a correct phone number and to be available at the time of the hearing. This written notice, mailed postage pre-paid to a party's correct address, created a rebuttable presumption of delivery. *Holt*, 724 So. 2d at 471 (¶25). It is undisputed that the notice of the second hearing was mailed in the same way as the first notice, postage pre-paid to the law firm's correct address. It is also undisputed that the law firm received the notice of the first hearing date as shown by its request for a continuance. Thus, the law firm needed to overcome a presumption of delivery and receipt of the notice of the second hearing to establish good cause for its non-participation in the ALJ hearing.[3]

_____

substantive issues shall be conducted only if the Board of Review determines that good cause exists.

(2) If it is decided that a party did not have good cause for nonappearance, no evidence will be taken on the substantive issues, and the decision previous made will remain unaffected and in force.

[3] Coe does not contest that at every material stage of these proceedings of this case, Bellinder acted either as its agent or as its legal representative with full authority to act on

¶26. On appeal to the Board of Review, Coe claimed that it did not receive the notice of the rehearing date, but Coe provided nothing to support that claim. A bare assertion of non-receipt without evidentiary support is not sufficient to reverse the ALJ's decision as we held in *Williams v. Mississippi Department of Employment Security*, 126 So. 3d 149 (Miss. Ct. App. 2013). In that case, Williams was terminated for refusing a drug test, which, according to the MDES claims examiner, disqualified Williams from receiving unemployment benefits. *Id*. at 150 (¶1). Williams appealed but failed to participate in the ALJ hearing by failing to answer the phone at the appointed time. *Id.* The Board of Review and the DeSoto County Circuit Court affirmed. *Id*. On appeal, this Court noted that Williams was mailed a "notice of telephonic hearing" containing the same cautionary language that the Coe Law Firm in this case received, namely that "[f]ailure to provide a valid telephone number, or the inability to receive a call at the time of the scheduled hearing, may result in the loss of the case." *Id*. at (¶4). Although failure to appear may be excused by a showing of good cause, Williams provided nothing but a claim of a "telecommunications error." *Id.* We found that this did not show good cause to excuse his failure to appear at the hearing. *Id.* Williams went further and tried to argue that he was not terminated for misconduct, but we held that his argument was moot because he had abandoned his appeal. *Id.* at 151 (¶7).

¶27. In this case, Coe makes the same failing arguments that Williams did. Coe received the same notice with the same cautionary language as Williams and failed to appear at the ALJ hearing. Coe contends that it failed to appear because it did not receive the notice of

Coe's behalf.

12

rehearing.[4] However, Coe provided no reason for not receiving notice. It did not claim that the address on the notice was wrong, or that the postage for the mailing was not prepaid. It did not even argue to the Board of Review that there were other reasons beyond its control for not receiving the notice, such as post office errors or chronic mail delivery problems.[5] In *Holt*, 724 So. 2d at 471 (¶24), we stated:

> What is needed is sufficient evidence to convince a fact-finder that the specific document was never received by the [party].
>
> This is a difficult burden, but some specific evidence is needed or else the presumption is ephemeral and has no more weight than a statement that the notice was sent. There is a serviceable presumption that the vast majority of mail is properly and relatively timely delivered. A trial judge must conclude that the relevant letter falls into the substantial majority of properly and timely delivered mail unless meaningful evidence undermining that presumption is received. If every so often a properly addressed, postage prepaid first class letter is not delivered, the position that the relevant letter was one of those exceptions must be proven with some degree of specificity.

*Id*. at (¶¶24-25); *see also Miss. Emp. Sec. Comm'n v. Marion Cnty. Sheriff's Dept.*, 865 So. 2d at 1157 (¶10) ("Mere denial that the notice was received, without supporting evidence, fails to constitute good cause for failing to timely appeal."). In *Good Samaritan Personnel Services*, 996 So. 2d at 813 (¶12), we found the testimony of two employees at Good

---

[4] In its brief, the law firm claims that it has "sworn on multiple occasions" that it did not receive the notice. However, nowhere in the record is there any sworn statement from anyone at the law firm—no affidavits, not even a verified petition. Even if they had submitted a sworn statement, without further support, the statement alone would be insufficient to show good cause under *Holt*.

[5] In its brief, the law firm argued that the law firm "has experienced extensive issues with delayed or mis-boxed mail." But it did not raise these facts or provide any proof of them to the Board of Review in its letter and notice of appeal of the ALJ's decision, nor did Coe argue these facts to the circuit court.

Samaritan that they would have been the ones to have found a notice of a claims examiner's decision and they did not was insufficient to establish good cause. We stated, "Good Samaritan has failed to provide any evidence that its failure to receive notice of the claims examiner's decision was due to an act beyond its control." *Id*. In this case, Coe's mere denial of receipt of the hearing notice is clearly insufficient by itself to establish good cause.

¶28. Coe also argues that the ALJ did not call its phone number, as Overstreet's employer, but rather the ALJ called Bellinder at his phone number. The law firm also claims that Overstreet never sought to correct the ALJ who had the incorrect phone number for the law firm. However, the claims examiner's record clearly shows that Overstreet provided both Bellinder's and Coe's phone numbers. The record also shows that Bellinder was the individual who terminated Overstreet and that Bellinder either shared Overstreet as an employee or represented Coe. Thus, the call was correctly directed to Bellinder, who could have called anyone from Coe as a witness if needed. If he were acting as the attorney for the law firm, Bellinder was the appropriate individual for the ALJ to call.[6] Finally, and most significantly, Bellinder's phone number was the number listed on the notices of hearing sent to Coe as the number for the ALJ to contact. The notices clearly stated that Coe was to contact the ALJ if the number was not correct. The burden was on the law firm to provide the ALJ with any other number it wanted the ALJ to use for hearing purposes.

¶29. In summary, the reasons provided by Coe are insufficient, unsubstantiated, and do not

---

[6] We note that Bellinder also filed Coe's appeal to the Supreme Court, listing his address and his phone number, which represents to this Court that contact with Coe is via Bellinder.

14

constitute good cause for the law firm's failure to participate in the ALJ hearing. Accordingly, we find no merit to the law firm's due process argument and find that the law firm's appeal to the ALJ was properly dismissed.

**II. Whether Overstreet was disqualified from receiving benefits because she committed work-related misconduct.**

¶30. Despite Coe's failure to appear at the ALJ hearing, Coe contends that the record sufficiently establishes Overstreet's action amounted to misconduct at work, and the ALJ should have reversed the claims examiner's decision to award her benefits. However, even Coe recognizes that its opportunity to present proof of Overstreet's misconduct was at the ALJ's de novo hearing on the matter. Because the appeal was properly dismissed, we find any argument concerning misconduct by Overstreet is moot. *See Williams*, 126 So. 3d at 151 (¶7) (holding that when a party fails to appear at an ALJ hearing without a showing of good cause, any argument on whether a claimant was terminated for misconduct was moot because the party had abandoned his appeal).

**Conclusion**

¶31. Because the Coe Law Firm failed to show good cause for not appearing at the ALJ de novo hearing, the Board of Review did not err in affirming the ALJ's decision to dismiss Coe's appeal of the claims examiner's decision. In addition, because Coe abandoned its appeal of the claims examiner's decision, the issue of any misconduct by Overstreet is moot. Accordingly, the Board of Review and the circuit court did not abuse their discretion, and the circuit court's order of dismissal is affirmed.

¶32. **AFFIRMED.**

15

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**