This case began as one by Robert E. Munn against Low Cost Cars, Inc., a corporation, d/b/a Smith Motor Company, for damages on account of misrepresentation and breach of warranty concerning a motor vehicle. Then, Chrysler Corporation was added as a defendant as to the breach of warranty claim. Subsequently, a counterclaim was filed by Low Cost against Munn for a deficiency, resulting from resale upon repossession, on the promissory note given upon purchase of the vehicle. Following that, Munn amended, claiming that Low Cost repossessed the vehicle in such a fashion as to amount to a conversion of it. The action proceeded to trial before a jury. At the close of Munn's case in chief, verdict was directed in favor of Low Cost as to the fraud claims. At the conclusion of the trial, defendants moved for directed verdicts; the motions were denied. The jury returned a verdict in favor of Munn and against Low Cost on both the conversion claim and that for breach of warranty. It assessed damages at $40,000 on the conversion claim but none on the one for breach of warranty. It returned a verdict for $1,900 in favor of Low Cost for the deficiency. Verdict was found in favor of Chrysler Corporation. Judgments were entered accordingly, including one for zero dollars on the claim for breach of warranty. Low Cost filed a motion for new trial and one for judgment non obstanteveredicto, which were denied. This appeal ensued.
Low Cost states the issues as follows:
 I. Whether the trial court committed reversible error in failing to follow the requirement of Rule 51 of the Alabama Rules of Civil Procedure in denying defendant an opportunity to object to the court's charge to the jury outside the presence of the jury.
 II. Whether the trial court erred in charging the jury that failure of the debtor to receive a notice of resale of repossessed collateral was the legal equivalent of conversion.
 III. Whether plaintiff's evidence established a conversion absent a showing of demand and refusal.
 IV. Whether the trial court erred in submitting the issue of punitive damages to the jury.
 V. Whether the trial court erred in refusing to allow defendant's counsel to argue dates of filing of plaintiff's claims.
 VI. Whether the trial court erred in instructing the jury as to the measure of damages in conversion.
 VII. Whether the verdict was erroneous as a quotient verdict.
VIII. Whether the verdicts were inconsistent.
IX. Whether an award of $40,000 is excessive.
Resolution of the first two issues is dispositive of this case, but after treating those we will briefly comment on some of the others because we are reversing and remanding and think it might be helpful for the guidance of the parties and the trial court upon retrial of this case.
Before addressing the dispositive issues, we must recite sufficient facts in the record to show the events giving rise to the action. Many of these facts are hotly disputed, but, a version generally favorable to Munn would reflect the following events. On Saturday, 10 September 1977, Munn agreed to purchase a 1977 Plymouth Trailduster truck from Low Cost Cars, Inc., d/b/a Smith Motor Company. He drove the truck home and took with him certain paperwork to *Page 279 
complete and return. Over the weekend and before he returned to Smith on Monday to make the cash down payment finalizing the sale, Munn discovered slivers of glass in the carpet of the truck and a water leak around the windshield. On Monday he learned that it had been damaged in shipping and the front windshield had been replaced. He left the truck with Smith to have the leak around the windshield corrected.
The terms of the sale provided for a $9,385 purchase price, of which $800 was paid in cash, $1,632 was credited to Munn as a net trade-in allowance, and the balance of $6,973, plus other miscellaneous charges, was financed. Smith took an installment promissory note in payment of, and a security interest in the truck as collateral for, the financed balance.
Munn complained of several defects in the truck, including a water leak around the windshield, a water leak around the sunroof, a dust leak around the tailgate, an unsewn seam in the upholstery, an improperly fitted carpet, a malfunction in the four wheel drive shift and a defective radio light. Munn took the truck to Smith several times for repairs.
The first monthly payment was due on 25 October 1977, but Munn never made this or any other installment payment. Several attempts were made to collect the 25 October 1977 payment and on 18 November 1977, Othel Creel, Collection Manager for Smith, went to Munn's home to repossess the truck. Creel, upon observing that water had leaked into the truck, asked if Munn would make the payments if the truck were repaired. Munn agreed, and the next day took the truck to Smith for repairs. Smith lent a truck to Munn for the latter's use while his truck was being repaired.
Certain repairs had been made on the truck and on Thursday, 24 November 1977, Robert Arthur Paul, an employee of Smith Motors, after cleaning it, left the keys in the truck. He broke into Smith's on the night of 26 November 1977 and stole the truck. It was recovered in the early morning of Sunday, 27 November 1977, after Paul had been involved in a hit and run accident in which substantial damage was done the truck. Paul was then fired by Smith.
Munn was informed of the theft and damage but refused to sign a proof of loss statement required under an insurance policy naming the bank, holding the security interest in the truck with right of recourse, as loss payee.
Smith and the bank, as a standard practice, began their collection process when accounts of this type were ten days past due and commenced repossession proceedings when the payments were thirty days past due; this one was thirty days past due on 25 November 1977. There is evidence that written notice, properly addressed to Munn, with postage affixed, was deposited in the mail on 26 November 1977. It was notice that the truck had been repossessed and would be sold if payments had not been received, or satisfactory arrangements made for payment, by 10 December 1977. Munn testified, however, that he neither received that notice nor any notice that the repairs, for which the truck had been brought in, were completed. Munn made no inquiries about or demands for return of the truck.
Smith made monthly payments to the bank and, on 4 January 1978, paid the outstanding balance due on the truck. The bank reassigned the note to Smith. Meanwhile, Smith had repaired the truck and placed it on its lot for sale. In April 1978, Smith sold the truck to an individual for less than the balance due on the note; hence the deficiency.
Actually, the first two issues may be treated as one because if there was no error in the instructions to the jury then there was no prejudicial error in the failure to afford Low Cost the opportunity of objecting to the instructions before the jury retired to deliberate and outside its hearing. Millerv. Dacovich, 355 So.2d 1109 (Ala. 1978).
Upon Munn's request, the trial court gave his written instruction number two. It read as follows: *Page 280 
 I charge you, Ladies and Gentlemen of the jury, that pursuant to the Uniform Commercial Code of the State of Alabama, Robert Munn was entitled to reasonable notification of the time and place of any public sale or reasonable notification of the time of any private sale or other intended disposition of the 1977 Plymouth truck by the defendant, Low Cost Cars, Inc., and in the event you should find from the evidence that the Plaintiff received no such notice from the said Defendant, said Defendant would be guilty of a conversion of said motor vehicle. [Emphasis added.]
This charge is clearly and patently erroneous.
Regarding a secured party's right to dispose of collateral after default, Code 1975, § 7-9-504 (3), provides that: ". . . [R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. . . ." (Emphasis added.)
The term "send" is defined in Code 1975, § 7-1-201 (38): ". . . to deposit in the mail or deliver for transmission by any other usual means of communications with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances."
The trial court read to the jury the provisions of Code 1975, §§ 7-9-504 (3), and 7-1-201 (38), together with several other sections of the Commercial Code. The instruction in question is clearly inconsistent with the above cited sections in that it requires receipt of notification by the debtor while the code sections only require that notification be sent.
Although notice must be sent prior to disposition of repossessed collateral, there is no requirement that notice be sent prior to repossession. Weaver v. O'Meara Motor Co.,452 P.2d 87 (Alaska 1969); Teeter Motor Co., Inc. v. First NationalBank of Hot Springs, 260 Ark. 764, 543 S.W.2d 938 (1976); FordMotor Credit Co. v. Hunt, 241 Ga. 342, 245 S.E.2d 295 (1978). The requirement that reasonable notification be sent to the debtor, however, clearly does not require that the debtor receive it. Northwest Bank Trust Co. v. Gutshall,274 N.W.2d 713 (Iowa 1979); MFT Leasing v. Fillmore Products, Inc.,579 P.2d 924 (Utah 1978). The given written instruction required the jury to find Low Cost guilty of conversion if it found from the evidence that Munn had not received reasonable notification of any private sale or other disposition of the truck. This placed an additional burden on Low Cost beyond that required by the Commercial Code. Furthermore, this court has held it to be error to give contradictory or conflicting instructions to the jury. Russell v. Thomas, 278 Ala. 400, 178 So.2d 556 (1965). In this case, the trial court had read §§ 7-1-201 (38) and 7-9-504 (3) before it read Munn's written requested charge numbered two.
It was reversible error to give Munn's written requested charge numbered two and therefore also reversible error to not comply with Rule 51, ARCP. Rule 51 is explicit in its requirement that "[o]pportunity shall be given to make the objection out of the hearing of the jury." It was not afforded counsel for Low Cost in this case. The record shows that the trial court inquired at the conclusion of its instructions to the jury, in the presence of the jury, if there were any objections to the instructions. Counsel for Low Cost stated he had some exceptions, in spite of which the trial court promptly submitted the case to the jury for deliberation and verdict; it thereupon retired to the jury room for that purpose. Low Cost's counsel then stated objections to the instructions, including Munn's numbered two, and assigned grounds. See Beloit Corp. v.Harrell, 339 So.2d 992 (Ala. 1976).
A few brief comments, regarding other alleged errors embraced within two of the significant issues, that, hopefully, may prove helpful upon retrial of this action. *Page 281 
Under the facts of this case as they were developed during the trial, evidence relating to the dates of the filing of Munn's claims raised a triable issue regarding any alleged conversion, and argument concerning them would be appropriate.
The verdicts were inconsistent and contradictory. If there was a conversion consisting of exercise of dominion over Munn's property, that to which he has general or special title and possession or the immediate right to possession, in exclusion of or in defiance of his rights, there can be no right upon the part of Low Cost to recover a deficiency. To hold otherwise would say that a tortfeasor may, at least partially, profit from his own wrongdoing. This would be true whether the conversion came about because of wrongful repossession and sale by fraud, deception, trickery, deceit or through breach of contract, or in violation of applicable statutes. The genesis of this rationale in general is found in the common law because deficiency judgments are in derogation of the common law; any right to a deficiency accrues only after strict compliance with relevant statutes. See Leasco Data Processing EquipmentCorporation v. Atlas Shirt Co., Inc., 66 Misc.2d 1089,323 N.Y.S.2d 13 (N.Y.Civ. 1971). In general, regarding jury instructions where inconsistent theories of recovery are involved, see United States Fidelity Guaranty Co. v.McKinnon, 356 So.2d 600 (Ala. 1978).
For the reasons assigned, we are compelled to reverse the judgments below and remand for retrial.
REVERSED AND REMANDED.
FAULKNER, JONES, ALMON and ADAMS, JJ., concur.