This is a Truth-in-Lending Act case. *Page 743 
The debtor, Mr. Perry L. Underwood, purchased an automobile from Huntsville Dodge, Inc., on January 5, 1981 and financed the purchase through First Alabama Bank of Huntsville (Bank). The debtor defaulted on the payment agreement in March. The Bank then repossessed the vehicle and sold it at a private sale. The debtor then filed suit in July, 1981, contending that the Bank had violated the disclosure requirements in the Truth-in-Lending Act, 15 U.S.C. § 1631-1638 (1976) and Regulation Z, 12 C.F.R. § 226.8 (1979). The debtor also contended that the Bank had violated § 7-9-504 of the 1975 Alabama Code in that the Bank failed to provide adequate notice of the resale of the automobile. The Bank filed a counterclaim to recover the deficiency due on the contract price after the resale of the automobile.
The trial court entered judgment against the debtor on his complaint and in favor of the Bank on its counterclaim. The debtor appeals from the trial court's actions regarding his claims against the Bank. The debtor took no appeal on the counterclaim. We affirm.
A review of the record reveals the following pertinent facts:
The debtor purchased an automobile from Huntsville Dodge, Inc., and financed it through the Bank. When the debtor failed to make the first two payments, the Bank repossessed the car on March 4, 1981.
The debtor testified that he called the Bank to find out how to get his automobile back. The substance of that conversation was in dispute, the debtor testifying that the Bank told him that he would have to pay two payments and the Bank claiming that they told the debtor he would have to pay the whole purchase price to get his car back.
According to the debtor's testimony, he attempted to raise the money to retrieve his vehicle and heard nothing further from the Bank until March 17, 1981. On that date, the debtor called the Bank and was informed that his automobile had been resold the day before, March 16.
After his telephone conversation with the Bank on March 17, the debtor met personally with Bank employees who again informed him that the automobile had been resold the day before. The debtor was then presented with a copy of the notice of resale which had been mailed to the debtor. The notice was post-marked March 4, 1981 and had been returned to the Bank stamped, "Attempted. Not Known, Return to Sender." It is not in dispute that the debtor did not receive the letter.
The notice explained that the debtor had until the end of the business day, March 16, 1981, to redeem the automobile or it would be resold the next day, March 17. The Bank, however, admittedly sold the vehicle on March 16.
After reading the notice letter, the debtor was sent to another Bank employee in order to collect personal belongings he had left in the car. This Bank employee returned debtor's belongings to him and then the debtor signed a document that consisted of a single page divided into three parts. The top part was labeled, "Repossession Report," a check list of the condition of the car and its contents. The bottom half of the document was divided into two parts, each labeled in bold type. The part that the debtor signed was entitled, "Release Agreement." This release purported, among other things, to waive debtor's right to redeem the collateral and right to notice of resale. After reading and signing the release agreement, the debtor left the Bank.
On appeal, the debtor contends that the Bank did not supply adequate notice of the resale according to the provisions of Ala. Code § 7-9-504 (3) (1975). Additionally, the debtor contends that a certain clause contained in the sale contract is an undisclosed security interest in violation of the federal Truth-in-Lending Act.
 I
We first address the debtor's contention regarding the alleged "Undisclosed security interest." The Truth-in-Lending Act requires *Page 744 
a creditor to disclose a "description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit." 15 U.S.C. § 1639
(a)(8). Regulation Z, promulgated by the Federal Reserve Board pursuant to authority granted in the Act, defines "security interests" and "security" to "mean any interest in property which secures payment or performance of an obligation."12 C.F.R. § 226.2 (gg). Regulation Z provides that the definition of security interests includes, but is not limited to, security interests under the Uniform Commercial Code. 12 C.F.R. § 226.2
(gg).
It is a requirement of the Act and Regulation Z that the debtor receive from the creditor a disclosure statement containing certain information. This information must be on the same side of one page. If the statute is not followed, a penalty of twice the amount of the finance charge plus a reasonable attorney fee is assessed against the creditor.
In the instant case a document entitled, "Sales Contract and Security Agreement," was introduced into evidence. This contract was for the purchase of an automobile and was signed by the debtor. On the back of the contract there is a clause numbered 16 which reads as follows: "Buyer waives all rights of exemption of property under the Constitution Laws of Alabama, except Alabama statutory exemptions from garnishment, or any other jurisdiction, as to all obligations of Buyer arising under this contract."
The debtor, through able counsel, contends that the waiver of exemption rights found in the contract constitutes a security interest for the purposes of the Truth-in-Lending Act 
Regulations and that the Bank failed to make the proper disclosure as required.
The debtor supports his position for the most part by relying on Elzea v. National Bank of Georgia, 570 F.2d 1248 (5th Cir. 1978).
In that case, the debtor assigned a homestead exemption to the creditor as part of an extension of consumer credit. The court held that the assignment was a security interest for the purposes of the Truth-in-Lending Act Regulations because it was an interest in property which secures payment of an obligation.
The Fifth Circuit Court of Appeals analyzed the question of whether a security interest exists by examining the rights of the creditor. They determined that an assignment of homestead exemptions under Georgia law gave the creditor enforceable rights in the exempted property.
The Elzea case can be distinguished from the present case in one important aspect. The Elzea case concerned an assignment of property exemptions. The instant case concerns a waiver of property exemptions. This distinction to this court is fatal to the debtor's argument.
Any person, by an instrument in writing, may waive his right to an exemption in any property. Ala. Code § 6-10-120 (1975). Regarding personalty, this waiver may be included in any promissory note or other written contract executed by the person making the waiver. Ala. Code § 6-10-121 (1975). Without making a determination one way or the other, we will assume for the sake of argument that the debtor in the instant case effectively waived his right to an exemption for his personal property. In light of Elzea, the question then arises, what effect does this waiver have on the creditor's rights in the exempted property? Put another way, does the waiver give the creditor an interest in debtor's property that secures payment on an existing obligation? We answer, as indicated, in the negative.
It has long been the law of this state that a mere waiver of exemptions does not of itself confer any title, estate, interest, or equity in the property of the debtor. "It is in no sense a lien or pledge." In re Tune, 115 F. 906 (D.C.N.D.Ala. 1902); In re Moore, 112 F. 289 (D.C.M.D.Ala. 1901); Craft v.Stoutz, 95 Ala. 245, 10 So. 647 (1892); 35 C.J.S., Exemptions § 111 (b). Applying that theory to the instant case, it appears that a waiver of exemptions under *Page 745 
Alabama law fails to meet Regulation Z's definition of a security interest. If the waiver confers no interest to the creditor, there can be no interest in property which secures payment.
In view of the above, we affirm the trial court's actions regarding debtor's claim on the Truth-in-Lending Act 
Regulations.
 II
The debtor next contends that there was no "reasonable notice" of the resale provided to the debtor in accordance with the governing statutory provisions. The debtor contends notice was insufficient for two reasons: one, that though mailed, the notice was never received by the debtor, and secondly, that the Bank failed to abide by the terms of its own written notice by selling the collateral one day too soon.
The relevant statute in pertinent part reads:
 "Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, . . . ."
Ala. Code § 7-9-504 (3) (1975).[1]
The comments to § 7-9-504 (3) state in pertinent part that:
 "`Reasonable notification' is not defined in this Article; at a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire."
In the instant case, the Bank mailed the written letter of notice to the address provided in the sales contract between the parties. The contract stated that the parties agreed that any notices to which the debtor was entitled would be mailed to the address as listed on the contract. The address as provided on the contract did not contain the debtor's apartment number. The Bank mailed the notice to the debtor at the address provided on the contract. But the document was returned undelivered.
We note there is a split of authority among the states on the question of what constitutes "reasonable" notice in situations where the notice is mailed but not received. Regardless of decisions in other states, our supreme court addressed this matter in Low Cost Cars, Inc. v. Munn, 399 So.2d 277 (Ala. 1981), holding that where written notice was properly addressed and mailed with postage affixed the notice requirements of the statute were met. "The notice requirement that reasonable notification be sent to the debtor, however, clearly does not require that the debtor receive it." Low Cost Cars, Inc. v.Munn, supra, at 280.
In this instance, in view of the language in Low Cost Cars,Inc., we cannot say that reasonable notice was not sent since the Bank mailed the notice to the address stated in the contract as the proper address of the debtor for such purposes.
The debtor next contends notice was insufficient because the automobile was not sold in accordance with the time specified in the notice. According to the terms of notice, the debtor had until the end of the business day, March 17. By the Bank's own admission, the automobile was sold March 16, 1981. The debtor contends this premature sale of the automobile renders the notice insufficient because the proper time element is essential in meeting the requirements of reasonable notice, and the time element was not properly stated in the notice.
The statutory language itself requires that a statement of the correct time element of resale is an essential element of reasonable notice. Ala. Code § 7-9-504 (3) (1975). Our cases have also recognized *Page 746 
that the proper time element is essential. Notice given after the time of the sale or when there is no time to redeem the collateral prior to the sale is clearly insufficient. Wells v.Central Bank of Alabama, N.A., 347 So.2d 114 (Ala.Civ.App. 1977). A letter which did not identify the timing of the resale was held insufficient notice in Simmons Machine Co. v. M MBrokerage, Inc., 409 So.2d 743 (Ala. 1981). Cf. First AlabamaBank of Montgomery, N.A. v. Parsons, 390 So.2d 640
(Ala.Civ.App. 1980). It therefore appears the premature sale of the automobile rendered the notice insufficient for lack of a correct statement of the time element.
However, in this case, the debtor signed a waiver on March 17 which waived his right to notice. Although not all courts are in agreement as to whether a debtor may waive his right to notice under § 7-9-504 (3), our supreme court has held:
 "Although our present § 7-9-504 (3) does not specifically allow a post-default waiver of notice by a debtor, we are of the opinion that the better position on this issue is to allow such a waiver. We are mindful that a default debtor's right to notice of the intended disposition of the secured collateral is one of the most important rights affording a debtor protection of his interest in the secured collateral under the U.C.C. Accordingly, we hold that a post-default waiver by a debtor of his right to notice under § 7-5-504 (3) can be made where the debtor knowingly and specifically agrees to waive his right to such notice."
Simmons Machine Co. v. M M Brokerage, Inc., supra, at 748.
There was evidence presented at trial which supports the trial court's implied finding that the debtor "knowingly" waived his right to notice. The debtor himself testified that he read the waiver, and signed it. The paragraph containing the waiver is clearly labeled in large, bold print, "Release Agreement." The pertinent part stated the debtor "waives all rights to redeem said collateral and waives all right to receive notice of method of disposition of said collateral. . . ."
The fact that the waiver was signed after the car was already sold does not appear to affect its validity. Although apparently there are no Alabama cases directly on point, a Florida court held that where the debtor wrote a letter disclaiming any interest in the collateral after the collateral was already sold that the debtor had waived his right to notice of the sale. Applestein v. National Bank of Tulsa,358 So.2d 106 (Fla.Dist.Ct.App. 1978).
The debtor's waiver then was effective to waive his right to notice regardless of the fact that the Bank's premature sale of the automobile rendered the notice ineffective.
In view of the above, the trial court is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.
[1] We note that § 7-9-504 has been revised effective February 1, 1982. However, the above quoted section is the law applicable in this case, and at any rate, no changes were made to the quoted section of § 7-9-504 (3) in the revision.