# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### ASSIGNED ON BRIEFS JULY 14, 2005

## FEDERAL EXPRESS CREDIT UNION v. BARRY LANIER

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005773-01      Kay Robilio, Judge**

---

**No. W2005-00194-COA-R3-CV - Filed October 27, 2005**

---

In this appeal, we are called upon to evaluate the propriety of the trial court's decision to award a creditor a deficiency judgment against the debtor following the sale of the collateral after the debtor defaulted on the loan.  The debtor filed an appeal to this Court arguing that the creditor failed to provide him with reasonable notice of the sale of the collateral and that the creditor did not conduct the sale in a commercially reasonable manner.  We hold that the creditor did not provide the debtor with reasonable notice. Accordingly, we reverse the decision of the trial court and remand this case to the trial court for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

William G. Hatton, Bolivar, TN, for Appellant

David A. Kirkscey, Memphis, TN, for Appellee

## OPINION

### I.
#### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For purposes of this appeal, the facts have been set forth in a "Joint Statement of the Evidence" entered into between the parties pursuant to Rule 24(c) of the Tennessee Rules of Appellate Procedure. On August 23, 1995, Barry Lanier ("Mr. Lanier" or "Appellant") signed a promissory note and security agreement in favor of Federal Express Credit Union (the "Credit Union" or "Appellee") to secure funds to purchase a 1995 Lexus automobile. The promissory note called for Mr. Lanier to make payments in the amount of $199.01 for fifty-nine (59) consecutive months followed by a balloon payment in the amount of $26,327.55 on July 31, 2000. Mr. Lanier made the required fifty-nine (59) consecutive monthly payments. However, when it came time to pay the final balloon payment, he was unable to tender the amount owed. The parties subsequently entered into negotiations in an effort to refinance the balloon payment, but the negotiations proved unsuccessful.

At the time of the events giving rise to the instant litigation, Mr. Lanier was employed by Federal Express Corporation ("Federal Express"). On the promissory note, Mr. Lanier listed his address as 1214 Central Avenue, Memphis, Tennessee, which remained his home address at the time the loan matured. After Mr. Lanier defaulted on the loan, the Credit Union repossessed the 1995 Lexus automobile from Mr. Lanier's home address. On November 29, 2000, the Credit Union sent a letter by certified mail to Mr. Lanier at his home address advising him that it intended to sell the vehicle at a private sale on December 15, 2000. The certified mail return receipt was never signed for or returned. At trial, Mr. Lanier testified that, at the time the Credit Union sent the notice, it knew he had been in Saudi Arabia for the past several years conducting business for his employer. In support of this assertion, Mr. Lanier testified to the following: the Credit Union had access to the computer files of Federal Express which enabled it to learn of Mr. Lanier's location (*i.e.*, Saudi Arabia) at the time the notice was sent; the Credit Union and Mr. Lanier spoke several times by phone and e-mail while he was in Saudi Arabia to negotiate the re-financing of the outstanding balance; and the Credit Union even contacted him in Saudi Arabia to discuss the indebtedness. Conversely, Larry Stevenson, the collection manager for the Credit Union, testified that the Credit Union is a separate and distinct entity from Federal Express, and it did not have direct access to any of the computer records maintained by Federal Express.

As promised in the letter sent to Mr. Lanier, the Credit Union conducted a private sale of the 1995 Lexus automobile on December 15, 2000. A deficiency remained after the Credit Union applied the proceeds of the sale to the outstanding loan amount. On May 31, 2001, the Credit Union filed a "Civil Warrant" in the General Sessions Court of Shelby County against Mr. Lanier to recoup $10,645.04 remaining on the promissory note and $3,547.99 in attorney's fees, for a total requested judgment in the amount of $14,193.03.

Ultimately, the case came to be heard by the Circuit Court of Shelby County.[1] The circuit court entered an order on January 3, 2005 finding "that [the Credit Union] should be awarded judgment against [Mr. Lanier] for the sum of $14,193.03." No additional findings of fact or conclusions of law are contained in the order. Mr. Lanier filed a timely notice of appeal to this Court presenting the following issues for our review:

1.   Whether the trial court erred in finding that the Credit Union's notice of the sale of the collateral was reasonable; and
2.   Whether the trial court erred in finding that the sale of the 1995 Lexus automobile was commercially reasonable.

For the reasons set forth herein, we reverse the decision of the circuit court and remand this case for further proceedings not inconsistent with this Opinion.

## II.
### STANDARD OF REVIEW

Our review of this case is complicated somewhat by the terseness of the trial court's order and the lack of a complete record of the proceedings below. Ordinarily, "review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d) (2005); *see also Decatur County Bank v. Smith*, No. 02A01-9903-CV-00074, 1999 Tenn. App. LEXIS 864, at *4 (Tenn. Ct. App. Dec. 27, 1999) (no perm. app. filed). We review the lower court's conclusions of law *de novo* without any presumption of correctness. *Dennis Joslin Co. v. Johnson*, 138 S.W.3d 197, 200 (Tenn. Ct. App. 2003) (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)).

In the instant case, there are no findings of fact which we may presume to be correct. Ordinarily, the absence of findings of fact by the trial court would require this Court to conduct an independent review of the record to determine where the preponderance of the evidence lies. *See*

---

[1] The record does not contain any disposition of this case by the general sessions court. Apparently, the case was appealed to the circuit court pursuant to section 16-15-729 of the Tennessee Code, which provides:

> No civil case, originating in a general sessions court and carried to a higher court, shall be dismissed by such court for any informality whatever, but shall be tried on its merits; and the court shall allow all amendments in the form of action, the parties thereto, or the statement of the cause of action, necessary to reach the merits, upon such terms as may be deemed just and proper. The trial shall be *de novo*, including damages.

Tenn. Code Ann. § 16-15-729 (2003). "Cases appealed from the general sessions court to the circuit court pursuant to Tenn.Code Ann. § 16-15-729 should be treated for all purposes as if they originated in the circuit court." *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000).

*Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002) (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). However, we cannot perform this task without a complete record. Thus, we are forced to determine whether the facts, as set forth in the "Joint Statement of the Evidence," support the trial court's judgment as a matter of law.

## III.
### DISCUSSION

We begin with an examination of whether the notice of the private sale provided to Mr. Lanier by the Credit Union was reasonable. Tennessee's version of Article 9 of the Uniform Commercial Code, codified at 47-9-101 *et seq.* of the Tennessee Code, provides, in relevant part, as follows:

> (a) DISPOSITION AFTER DEFAULT. After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.
> (b) COMMERCIALLY REASONABLE DISPOSITION. Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one (1) or more contracts, as a unit or in parcels, and at any time and place and on any terms.

Tenn. Code Ann. § 47-9-610 (2003). Tennessee's version of Article 9 further provides as follows:

> (b) NOTIFICATION OF DISPOSITION REQUIRED. Except as otherwise provided in subsection (d), a secured party that disposes of collateral under § 47-9-610 shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition.

Tenn. Code Ann. § 47-9-611(b) (2003).[2] Implicit in the trial court's ruling in this case is a finding that, as a matter of law, the notice provided by the Credit Union was sufficient.

The official comment to section 47-9-611(b) provides as follows: "The notification must be *reasonable* as to the manner in which it is sent, its timeliness (i.e., a reasonable time before the

---

[2] Subsection (d) provides that "[s]ubsection (b) does not apply if the collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market." Tenn. Code Ann. § 47-9-611(d) (2003). It is undisputed that subsection (d) is inapplicable to the instant case. Subsection (c) requires the secured party to "send an authenticated notification of disposition to . . . the debtor." Tenn. Code Ann. § 47-9-611(c) (2003).

disposition is to take place), and its content." Tenn. Code Ann. § 47-9-611 cmt. 2 (2003) (emphasis added). This Court has previously addressed the policy justification for requiring the creditor to send the debtor reasonable notice of the sale of the collateral:

> We think the provision for notice in connection with a sale is intended to afford the debtor a reasonable opportunity (1) to avoid a sale altogether by discharging the debt and redeeming the collateral or (2) in case of sale, to see that the collateral brings a fair price.

***Int'l Harvester Credit Corp. v. Ingram***, 619 S.W.2d 134, 137 (Tenn. Ct. App. 1981) (citing ***Mallicoat v. Volunteer Fin. Loan Corp.***, 415 S.W.2d 347, 350 (Tenn. Ct. App. 1966)).

On appeal, Mr. Lanier argues that the trial court erred in finding that the notice of the sale of the collateral provided by the Credit Union was reasonable and adequate under the circumstances present in this case. Mr. Lanier does not contest the timeliness or content of the notice. Instead, he contests the reasonableness of the manner in which it was sent. "[T]he reasonableness of the notice also encompasses a consideration of where the notice was sent." ***R & J of Tenn., Inc. v. Blankenship-Melton Real Estate, Inc.***, 166 S.W.3d 195, 203 (Tenn. Ct. App. 2004) (citing ***Commercial Credit Corp. v. Cutshall***, 28 U.C.C. Rep. Serv. (Callaghan) 277 (Tenn. Ct. App. 1979)). He urges this Court to find that the notice sent by the Credit Union does not amount to reasonable notice where (1) the record establishes that the Credit Union knew he was not at his home address but in a foreign country at the time it sent the notice, and (2) the certified mail return receipt was never signed for by Mr. Lanier or returned to the Credit Union. Conversely, the Credit Union urges this Court to find that the notice provided was reasonable because (1) Mr. Lanier maintained his home address in Memphis while he worked in Saudi Arabia, (2) he could have his mail forwarded to him by Federal Express at no charge since he worked in Saudi Arabia, (3) his wife remained in Memphis while he was in Saudi Arabia, and (4) it must be assumed that Mr. Lanier received the letter since the letter was not returned to the Credit Union.

At the outset, we must ascertain those facts which can be supported by the limited record in this case. After reading the "Joint Statement of the Evidence" filed by the parties, it appears that the question of whether the Credit Union knew that Mr. Lanier was in Saudi Arabia when it sent the notice of the sale of the collateral was a disputed issue of fact at trial. In the "Joint Statement of the Evidence," the parties stipulate that Mr. Lanier testified that the Credit Union knew he was in Saudi Arabia when it sent the notice of the sale of the collateral. Ordinarily, we defer to the trial court's findings of fact which hinge on the credibility of a witness. ***See Wells v. Tenn. Bd. of Regents***, 9 S.W.3d 779, 783 (Tenn. 1999) ("[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary."). It could be inferred from the trial court's ruling that, since the trial court found in favor of the Credit Union, the trial court necessarily found that the Credit Union did not know that Mr. Lanier resided somewhere other than his home address listed in the promissory note when it sent the notice. However, we need not make this inference. The Credit Union concedes in its brief that it had knowledge that Mr. Lanier was in Saudi Arabia when it sent the notice, stating as follows: "Granted, he was working in Saudi

Arabia for Federal Express, but he was still maintaining his residence in Memphis"; "he most assuredly had set up some method to have his mail forwarded to him"; "Appellant's wife was still in Memphis." Thus, we must conclude that the Credit Union knew that Mr. Lanier was living in Saudi Arabia at the time it sent the notice of the sale of the collateral to his home address in Memphis.

The Credit Union states that, since the letter was not returned to the Credit Union, this Court is to assume that it reached Mr. Lanier. The "Joint Statement of the Evidence" merely provides as follows: "The certified mail return receipt was never signed for or returned." This Court is not permitted to make the assumption urged upon it by the Credit Union. We must simply take the following stipulated fact to be true: the Credit Union never received any certified mail return receipt indicating that Mr. Lanier received the notice. There are additional statements of fact made by the Credit Union on appeal which have no support in the record. The Credit Union asserts as fact that Mr. Lanier was capable of having his mail forwarded to him in Saudi Arabia free of charge by Federal Express. This fact is nowhere in the "Joint Statement of the Evidence" presented to this Court on appeal. Therefore, this unproven fact has no bearing on our decision on appeal. Moreover, the Credit Union asserts that Mr. Lanier's wife remained in Memphis while he was in Saudi Arabia, presumably at the same address where it sent the notice. However, the "Joint Statement of the Evidence" merely provides as follows: "The Appellant was married, with his wife living at said residence." From this terse statement we cannot assume as true the fact the Credit Union urges upon this Court. There is nothing in the limited record to indicate that Mr. Lanier's wife lived at the residence when the notice was delivered or that she received the notice sent by the Credit Union.

Thus, we are only concerned with whether the notice of the sale of the collateral was proper based on the following facts: (1) the Credit Union knew that Mr. Lanier was in Saudi Arabia when it mailed the notice to his residence in Memphis, and (2) the Credit Union proceeded with a sale of the collateral when it had yet to receive a certified mail return receipt indicating that Mr. Lanier had or had not received the notice it sent to his residence in Memphis. Both parties have cited this Court to cases supporting their respective position on appeal. However, our decision in *R & J of Tennessee, Inc. v. Blankenship-Melton Real Estate, Inc.*, 166 S.W.3d 195 (Tenn. Ct. App. 2004), which discusses the cases relied on by the parties, controls our resolution of this case and requires that we find that the Credit Union did not provide Mr. Lanier with reasonable notice of the sale of the collateral at issue in this case.

In *R & J of Tennessee, Inc.*, the debtor executed a guaranty agreement promising to remain personally liable on a promissory note entered into by his business, in which he provided his home address. *R & J of Tenn., Inc.*, 166 S.W.3d at 198. However, the debtor moved after entering into the personal guaranty, and he never notified the bank of his new address. *Id*. at 199. When the company defaulted on the loan, the creditor sent, by certified mail, a notice to the debtor at the address listed on the personal guaranty indicating that the collateral would be sold at a public sale. *Id*. Even though the creditor had yet to receive any indication that the notice had reached the debtor, it went ahead and conducted a sale of the collateral. *Id*. On appeal, the debtor argued that the notice

given by the creditor was not reasonable. *Id*. at 201. We agreed with the debtor and reversed the trial court's decision that the notice of the sale of the collateral was reasonable. *Id*. at 205.

In finding that the creditor in *R & J of Tennessee, Inc.* did not provide reasonable notice of the sale of the collateral to the debtor, we stated:

> The definition section applicable to Tennessee's version of Article 9 does not define "notice," but we find guidance in the general definition section of the Code, which provides:
>
> > A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course *whether or not such other actually comes to know of it*. A person "receives" a notice or notification when:
> > (A) It comes to his attention; or
> > (B) It is duly delivered at the place of business *through which the contract was made or at any other place held out by him* as the place for receipt of such communications[.]
>
> Tenn. Code Ann. § 47-1-201(26) (2003) (emphasis added).
>
> . . . .
>
> In support of his argument that the notice given was not reasonable, [the debtor] relies on our decision in *Mallicoat v. Volunteer Finance & Loan Corp.*, 57 Tenn. App. 106, 415 S.W.2d 347 (Tenn. Ct. App. 1966). In *Mallicoat*, the secured party sent a notice of sale to the debtor by certified mail, but the notice was returned to the secured party undelivered. *Mallicoat*, 415 S.W.2d at 349. After receiving the returned notice, the secured party continued to conduct a sale of the collateral and sued the debtor for a deficiency judgment. *Id*. In finding the notice in that case insufficient under the predecessor statute to section 47-9-611, we stated:
>
> > In view of the undisputed proof in this case that the debtor did not receive the notice and that the secured creditor was aware that he had not received it, it is our opinion the creditor not only failed to show a compliance with the Act but that the record affirmatively shows a lack of compliance and a conscious disregard of the debtor's right to notice.

> The property was not perishable. The debtor lived in Knoxville where the creditor had its place of business and sold the property. In addition, the creditor had information as to where the debtor was employed and where his parents lived. Yet, the sale was allowed to proceed without any further effort to comply with the notice requirement.

*Id*. at 350; *First Tenn. Bank Nat'l Ass'n v. Helton*, No. 03A01-9501-CV-00026, 1995 Tenn. App. LEXIS 339, at *5-6 (Tenn. Ct. App. May 23, 1995).

Courts throughout the country vary as to whether the secured party has the burden of proving that the debtor or a secondary obligor received actual notice of a pending sale. *See* Richard C. Tinney, Annotation, *Sufficiency of Secured Party's Notification of Sale or Other Intended Disposition of Collateral Under UCC § 9-504(3)*, 11 A.L.R. 4th 241, §§ 14-16 (2003). Many of our sister states interpret the notice provision to require only that the creditor send notice. *See Underwood v. First Ala. Bank of Huntsville*, 453 So. 2d 742, 745 (Ala. Civ. App. 1983); *Hall v. Owen County State Bank*, 175 Ind. App. 150, 370 N.E.2d 918, 925 (Ind. Ct. App. 1977); *McKee v. Miss. Bank & Trust Co.*, 366 So. 2d 234, 238 (Miss. 1979); *Commerce Bank of St. Louis v. Dooling*, 875 S.W.2d 943, 946 (Mo. Ct. App. 1994); *First Nat'l Bank & Trust Co. of Lincoln v. Hermann*, 205 Neb. 169, 286 N.W.2d 750, 752 (Neb. 1980). Our decision in *Mallicoat*, however, demonstrates that Tennessee requires more than a mere "sending" in order for a secured party to be in compliance with the statute. James J. White & Robert S. Summers, *Uniform Commercial Code* § 26-10, at 987 (1972).

At the other end of the notice spectrum, we have held that the notice requirement is satisfied when the following occurs:

> The sending of notice, certified, return receipt requested, is commercially reasonable. When a plaintiff forwards notice to the debtor's proper address, certified, return receipt requested, and the notice is received at that address and returned signed by someone at the address, it is reasonable for plaintiff to assume that the defendant received the notice.

*Caterpillar Fin. Services Corp. v. Woods*, No. 89-326-II, 1990 Tenn. App. LEXIS 117, at *7-8 (Tenn. Ct. App. Feb. 22, 1990). Our case law makes clear that "the creditor will not be forced to take

responsibility for lost mail or the debtor's refusal to accept properly delivered mail." *Nationsbank v. Clegg*, No. 01-A-01-9510-CH-00469, 1996 Tenn. App. LEXIS 214, at \*14 (Tenn. Ct. App. Apr. 10, 1996). Yet, we have also made clear that:

> While absolute proof of receipt of notice may not be required in every instance, a creditor, who only makes one attempt to contact the debtor, and is left uncertain of receipt of the notice, has not fulfilled its obligation to the debtor when it proceeds with a disposition less than two weeks from mailing its first notice.

*Id*. at \*15-16.

We disagree with [the debtor's] assertion that section 47-9-611(b) requires the secured party to prove that the secondary obligor actually received the notice. *See Commercial Credit Corp. v. Cutshall*, 28 U.C.C. Rep. Serv. (Callaghan) 277 (Tenn. Ct. App. 1979). Based on the facts presented to the trial court below, however, we find the trial court's holding that notice in this case was sufficient under the statute to be erroneous as a matter of law. We are mindful that [the debtor] bears some responsibility for not receiving notice in this case. *See The Cent. Trust Co. of Northeastern Ohio v. Snair*, No. CA-5818, 1982 Ohio App. LEXIS 15214, at \*2-3 (Ohio Ct. App. June 23, 1982); *Gen. Motors Acceptance Corp. v. Horn*, No. 5861, 1978 Ohio App. LEXIS 11155, at \*5 (Ohio Ct. App. July 20, 1978). However, [the creditor] sent the notice to [the debtor] on June 11, 2002, and conducted a sale ten days later on June 21, 2002, without receiving any indication as to whether the notice actually reached [the debtor]. We find, therefore, that this amounts to unreasonable notice under the statute and reverse the trial court's holding on this issue. *See Nationsbank v. Clegg*, No. 01-A-01-9510-CH-00469, 1996 Tenn. App. LEXIS 214, at \*15-16 (Tenn. Ct. App. Apr. 10, 1996).

*Id*. at 203–05.

The facts in the instant case fit squarely within our holding in *R & J of Tennessee, Inc*. Like the creditor in *R & J of Tennessee, Inc.*, the Credit Union, on November 29, 2000, sent the notice of the sale of the collateral to the address Mr. Lanier provided on the promissory note. On December 15, 2000, approximately seventeen (17) days later, the Credit Union, as did the creditor in *R & J of Tennessee, Inc.*, proceeded to conduct a sale of the collateral without having received any indication as to whether the notice reached the debtor. As we stated in *R & J of Tennessee, Inc.*, this amounts to unreasonable notice. ***See Nationsbank***, 1996 Tenn. App. LEXIS 214, at \*15–16 (finding that the creditor, who sent only one notice and proceeded to conduct a sale of the collateral a short time later

without learning whether the debtor received the notice, provided unreasonable notice to the debtor). Moreover, the facts present in this case more forcefully support a finding that the Credit Union did not provide Mr. Lanier with reasonable notice. Unlike the creditor in *R & J of Tennessee, Inc.*, the Credit Union, as it readily concedes in its brief filed with this Court, had actual knowledge that Mr. Lanier was in Saudi Arabia and not at the address where it sent the notice.[3] Despite knowing the exact whereabouts of Mr. Lanier, nothing in the record indicates that the Credit Union did anything to ensure that Mr. Lanier received the notice while in Saudi Arabia.

"The requirement of notice is for the benefit and protection of the debtor." *Mallicoat*, 415 S.W.2d at 350. "The requirement of notice is not a mere formality . . . ." *Gen. Motors Acceptance Corp. v. Middleton*, No. 02A01-9103-CH-00033, 1991 Tenn. App. LEXIS 820, at *5 (Tenn. Ct. App. Oct. 16, 1991) (no perm. app. filed). This Court has previously expressed its disfavor with the practice of providing perfunctory notice as a matter of form, stating:

> "Notice which is a mere gesture is not notice. The means employed must be such as one desirous of actually informing the absent party might reasonably adopt. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865."

*Mallicoat*, 415 S.W.2d at 351 (citing *Burden v. Burden*, 313 S.W.2d 566, 570 (Tenn. Ct. App. 1957)). Accordingly, we conclude that the Credit Union did not provide Mr. Lanier with reasonable notice of the sale of the collateral as required by section 47-9-611 of the Tennessee Code.

Next, we turn to the second issue raised by Mr. Lanier on appeal. He contends that, since the Credit Union failed to provide reasonable notice in this case, the subsequent sale of the collateral is, as a matter of law, commercially unreasonable. We cannot agree.

Tennessee's version of Article 9 requires that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." Tenn. Code Ann. § 47-9-610(b) (2003). However, lack of reasonable notice of the sale of the collateral is merely "[o]ne element bearing on [the] question of whether the sale was 'commercially reasonable.'" *Mallicoat*, 415 S.W.2d at 351; *see also Decatur County Bank v. Smith*, No. 02A01-9903-CV-00074, 1999 Tenn. App. LEXIS 864, at *8–9 (Tenn. Ct. App. Dec. 27, 1999) (no perm. app. filed); *Gen. Motors Acceptance Corp.*, 1991 Tenn. App. LEXIS 820, at *11. Even though a creditor may fail to provide reasonable notice of the sale of the collateral to the debtor, it may still seek to recover a deficiency judgment resulting from such sale. *Gen. Motors Acceptance Corp.*,

---

[3] In *R & J of Tennessee, Inc.*, the debtor attempted to prove that the creditor had actual knowledge of his correct address by pointing to a federal complaint, which listed the debtor's correct address, filed by the creditor against the debtor on the date of the sale of the collateral. *R & J of Tennessee, Inc.*, 166 S.W.3d at 202. The debtor attached a copy of the federal complaint to his motion to alter or amend the trial court's judgment that the notice provided by the creditor in that case was reasonable. *Id*. The trial court denied the debtor's motion to introduce the newly discovered evidence, and we found that the trial court did not abuse its discretion in denying the debtor's motion. *Id*. Accordingly, we declined to consider the contents of the federal complaint on appeal. *Id*.

1991 Tenn. App. LEXIS 820, at *7. "The burden of proving that a sale of collateral is commercially reasonable under these statutes is on the secured party seeking the deficiency judgment." *Decatur County Bank*, 1999 Tenn. App. LEXIS 864, at *7 (citations omitted). Moreover, since the Credit Union failed to provide Mr. Lanier with reasonable notice of the sale of the collateral, Mr. Lanier may be entitled to certain statutory damages. *See* Tenn. Code Ann. § 47-9-625 (2003); *R & J of Tennessee, Inc.*, 166 S.W.3d at 210; *Mallicoat*, 415 S.W.2d at 351; *Gen. Motors Acceptance Corp.*, 1991 Tenn. App. LEXIS 820, at *7.

While the trial court's order does not expressly state as much, it is possible to infer that, by ruling in favor of the Credit Union, the trial court necessarily ruled that the sale of the collateral was commercially reasonable. However, there are no facts in the "Joint Statement of the Evidence," other than those supporting our conclusion that the Credit Union did not provide reasonable notice in this case, which would enable us to adequately address this issue. *See Mallicoat*, 415 S.W.2d at 351 ("There is no finding by the trial judge on this question and the record is not such that we can determine the rights of the parties."). Given our need to reverse the trial court's ruling, in so far as it found the notice provided to Mr. Lanier to be reasonable in this case, we remand this case to the trial court for further proceedings on (1) whether the sale of the collateral by the Credit Union was commercially reasonable in this case, and (2) whether Mr. Lanier is entitled to statutory damages for the Credit Union's failure to provide reasonable notice of the sale. *See R & J of Tennessee, Inc.*, 166 S.W.3d at 210–11.

## IV.
### CONCLUSION

For the aforementioned reasons, we reverse the ruling of the trial court and remand this case for further proceedings not inconsistent with this Opinion. Costs of this appeal are to be taxed to the Appellee, Federal Express Credit Union, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

-11-